**Lansing, Michigan**

# Opinion

Chief Justice:          Justices:
Robert P. Young, Jr.    Michael F. Cavanagh
                        Marilyn Kelly
                        Stephen J. Markman
                        Diane M. Hathaway
                        Mary Beth Kelly
                        Brian K. Zahra

FILED JUNE 15, 2012

STATE OF MICHIGAN

SUPREME COURT

TITAN INSURANCE COMPANY,

        Plaintiff-Appellant,

v                                                   No. 142774

McKINLEY HYTEN, HOWARD
HOLMES, and MARTHA HOLMES,

        Defendants-Appellees,

and

FARM BUREAU INSURANCE
COMPANY,

        Intervening Defendant-
        Appellee.

BEFORE THE ENTIRE BENCH

MARKMAN, J.

We granted leave to appeal to address whether an insurance carrier may avail itself

of traditional legal and equitable remedies to avoid liability under an insurance policy on

the ground of fraud in the application for insurance, when the fraud was easily

ascertainable and the claimant is a third party. In accordance with this Court's precedent in *Keys v Pace*, 358 Mich 74; 99 NW2d 547 (1959), we answer this question in the affirmative. There being nothing in the law to warrant the establishment of an "easily ascertainable" rule, we overrule *State Farm Mut Auto Ins Co v Kurylowicz*, 67 Mich App 568; 242 NW2d 530 (1976), and its progeny[1] and reverse the judgment of the Court of Appeals.

## I. FACTS

McKinley Hyten obtained a provisional driver's license in April 2004. In January 2007, Hyten's driver's license was suspended by the Secretary of State because of multiple moving violations and two minor traffic accidents. In light of what she perceived as assurances from her probation officer, Hyten anticipated that her license would be restored at a district court hearing scheduled for August 24, 2007.

That same year, Hyten's mother, Anne Johnson, inherited a motor vehicle that she "earmarked" for Hyten. Given the anticipated restoration of Hyten's driver's license, Johnson sought to obtain automobile insurance for Hyten. Johnson telephoned an independent insurance agent who, after being told that Hyten's license had been suspended, informed Johnson that Hyten could not be insured until her license had been restored. Nonetheless, an application for insurance from Titan Insurance Company was

---

[1] To the extent that *Ohio Farmers Ins Co v Mich Mut Ins Co*, 179 Mich App 355, 357-358, 362-363; 445 NW2d 228 (1989), *Farmers Ins Exch v Anderson*, 206 Mich App 214, 219; 520 NW2d 686 (1994), and *Manier v MIC Gen Ins Corp*, 281 Mich App 485, 489-490; 760 NW2d 293 (2008), held or stated that an insurer is estopped from denying coverage on the basis of fraud when it could have easily ascertained the fraud, these decisions are overruled.

filled out on Hyten's behalf and postdated to August 24, 2007, and on August 22, 2007, Hyten signed the application for insurance. The application form asked, "Does the applicant's household have any unlicensed drivers or any drivers with a suspended or revoked driver's license?" In response to this question, the "No" box was checked. The form stated that Titan could review Hyten's driving record, but also stated that Titan could rely on the applicant's representations. On August 24, 2007, the policy became effective and provided personal protection insurance coverage for bodily injury of $100,000 per person/$300,000 per occurrence.

At the August 24, 2007, hearing, Hyten's driver's license was not restored, and it was not restored until September 20, 2007. Titan was not informed of this fact. Subsequently, in February 2008, Hyten was driving the insured vehicle and collided with the vehicle of Howard and Martha Holmes, causing injuries to them. In the process of investigating the accident, Titan learned that Hyten did not have a valid driver's license when the policy was issued. In anticipation that the Holmeses would be filing claims against Hyten for their injuries, Titan filed the instant action seeking a declaratory judgment. Titan averred that had it been informed that Hyten's license had been suspended, it would never have accepted the risk and would not have issued the insurance policy. Given Hyten's fraudulent conduct in her application for insurance, Titan sought a declaration that, should the Holmeses prevail in their action, Titan was not obligated to indemnify Hyten.[2]

---

[2] Titan did not seek to completely avoid liability under the insurance policy. Rather, Titan sought a declaration that it was not obligated to indemnify Hyten for any amounts *above* the minimum liability coverage limits required by the financial responsibility act

3

Farm Bureau Insurance Company, the Holmeses' insurer, intervened as a defendant, and Titan, Farm Bureau, and Hyten each filed cross-motions for summary disposition. Relying on Court of Appeals decisions holding that an insurer may not avoid liability under an insurance policy for fraud that was easily ascertainable, and concluding that whether a person possesses a valid driver's license is easily ascertainable, the trial court granted Farm Bureau's and Hyten's motions for summary disposition. The Court of Appeals affirmed on the basis of *Kurylowicz*, asserting that once an insurable event has occurred and a third party (the Holmeses here) possesses a claim against an insured arising out of that event, an insurer is not entitled to reform the policy to the third-party's detriment when the fraud by the insured was easily ascertainable. *Titan Ins Co v Hyten*, 291 Mich App 445; 805 NW2d 503 (2011) (*Hyten I*). Titan filed an application for leave to appeal in this Court, which we granted. *Titan Ins Co v Hyten*, 490 Mich 868 (2011) (*Hyten II*).[3]

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Shepherd Montessori Ctr Milan v Ann Arbor Charter Twp*, 486 Mich 311, 317; 783 NW2d 695 (2010). In addition, the proper interpretation of a statute is a question of law that this Court reviews de novo. *Eggleston v Bio-Med Applications of*

---

($20,000 per person/$40,000 per occurrence), MCL 257.501 *et seq.*, for which Titan acknowledged responsibility.

[3] The Court's order directed the parties to address "whether an insurance carrier may reform an insurance policy on the ground of misrepresentation in the application for insurance where the misrepresentation is 'easily ascertainable' and the claimant is an injured third party." *Hyten II*, 490 Mich at 868-869

4

*Detroit, Inc*, 468 Mich 29, 32; 658 NW2d 139 (2003). The proper interpretation of a contract is also a question of law that this Court reviews de novo. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW 2d 23 (2005).

## III. ANALYSIS

## A. POLICIES AS CONTRACTS

Insurance policies are contracts and, in the absence of an applicable statute, are "subject to the same contract construction principles that apply to any other species of contract." *Id*. at 461. As this Court noted in *Rohlman v Hawkeye-Security Ins Co*, 442 Mich 520, 525 n 3; 502 NW2d 310 (1993), quoting 12A Couch, Insurance, 2d (rev ed), § 45:694, pp 331-332,

> [the insurance] policy and the statutes relating thereto must be read and construed together as though the statutes were a part of the contract, for it is to be presumed that the parties contracted with the intention of executing a policy satisfying the statutory requirements, and intended to make the contract to carry out its purpose.

Thus, when a provision in an insurance policy is mandated by statute, the rights and limitations of the coverage are governed by that statute. See *Rohlman*, 442 Mich at 524-525 (holding that because personal injury protection benefits are mandated by MCL 500.3105, that statute governs issues regarding an award of those benefits). On the other hand, when a provision in an insurance policy is not mandated by statute, the rights and limitations of the coverage are entirely contractual and construed without reference to the statute. See *Rory*, 473 Mich at 465-466 (holding that because uninsured-motorist coverage is optional and not mandated by statute, "the rights and limitations of such coverage are purely contractual and construed without reference to the no-fault act").

5

In addition, because insurance policies are contracts, common-law defenses may be invoked to avoid enforcement of an insurance policy, unless those defenses are prohibited by statute. See *id.* at 470. *Rory* noted that common-law defenses include duress, waiver, estoppel, fraud, and unconscionability. *Id.* at 470 n 23. In this case, Titan asserts the defense of fraud to avoid liability under the insurance policy entered into with Hyten.

## B. FRAUD

Michigan's contract law recognizes several interrelated but distinct common-law doctrines-- loosely aggregated under the rubric of "fraud"-- that may entitle a party to a legal or equitable remedy if a contract is obtained as a result of fraud or misrepresentation. These doctrines include actionable fraud, also known as fraudulent misrepresentation; innocent misrepresentation; and silent fraud, also known as fraudulent concealment. Regarding actionable fraud,

> [t]he general rule is that to constitute actionable fraud it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery. [*Candler v Heigho*, 208 Mich 115, 121; 175 NW 141 (1919), overruled in part on other grounds by *United States Fidelity & Guaranty Co v Black*, 412 Mich 99, 116 n 8; 13 NW2d 77 (1981) (citation and quotation marks omitted).][4]

---

[4] Concerning the reliance prong, it is true that "fraud is not perpetrated upon one who has full knowledge to the contrary of a representation." *Montgomery Ward & Co v Williams*, 330 Mich 275, 284; 47 NW2d 607 (1951). But there is no common-law duty to attempt to acquire such knowledge. For it is "well settled law that a payment . . . may be

The doctrine of innocent misrepresentation is also well settled in Michigan, recognizing,

> by a long line of cases, that if there was in fact a misrepresentation, though made innocently, and its deceptive influence was effective, the consequences to the plaintiff being as serious as though it had proceeded from a vicious purpose, he would have a right of action for the damages caused thereby either at law or in equity. [*United States Fidelity*, 412 Mich at 115, quoting *Holcomb v Noble*, 69 Mich 396, 399; 37 NW 497 (1888) (MORSE, J., concurring) (emphasis omitted).][5]

recovered, even if the mistake be due to lack of investigation." *Id*., quoting *Couper v Metro Life Ins Co*, 250 Mich 540, 544; 230 NW 929 (1930).

The Court of Appeals in the instant case held that "[t]here can be no fraud where a person has the *means* to determine that a representation is not true." *Hyten I*, 291 Mich App at 462, quoting *Nieves v Bell Industries, Inc*, 204 Mich App 459, 464; 517 NW2d 235 (1994) (emphasis added). When read in isolation, this statement might support the panel's conclusion that an insurer has a duty to investigate representations made by a potential insured. However, when the statement is read in the full context of the *Nieves* opinion, as well as other precedent, it is clear that an insurer has no duty to investigate the representations of a potential insured. The Court of Appeals in the instant case failed to recognize that in *Nieves*, and in the two cases relied on by *Nieves* in the pertinent portion of its opinion, *Montgomery Ward*, 330 Mich 275, and *Webb v First of Mich Corp*, 195 Mich App 470; 491 NW2d 851 (1992), the allegedly defrauded party was given direct information refuting the misrepresentations. Ignoring information that contradicts a misrepresentation is considerably different than failing to affirmatively and actively investigate a representation.

In *Mable Cleary Trust v Edward-Marlah Muzyl Trust*, 262 Mich App 485, 501; 686 NW2d 770 (2004), the Court of Appeals held that the rule articulated in *Nieves* is only applied when the plaintiff was "either presented with the information and chose to ignore it *or had some other indication that further inquiry was needed*." (Emphasis added.) To the extent that the latter part of this statement can be read to support the proposition that a party has an independent duty to investigate and corroborate representations, we overrule *Mable Cleary Trust*.

[5] The distinctions between actionable fraud and innocent misrepresentation were outlined by this Court in *United States Fidelity*, 412 Mich at 118-119. There, it was noted that

7

Silent fraud has also long been recognized in Michigan. This doctrine holds that when there is a legal or equitable duty of disclosure, "[a] fraud arising from the suppression of the truth is as prejudicial as that which springs from the assertion of a falsehood, and courts have not hesitated to sustain recoveries where the truth has been suppressed with the intent to defraud." *Tompkins v Hollister*, 60 Mich 470, 483; 27 NW 651 (1886) (citations omitted); see also *United States Fidelity*, 412 Mich at 125.

As is evident, although the doctrines of actionable fraud, innocent misrepresentation, and silent fraud each contain separate elements, none of these doctrines requires that the party asserting fraud prove that the fraud could not have been discovered through the exercise of reasonable diligence. Stated differently, these doctrines do not require the party asserting fraud to have performed an investigation of all assertions and representations made by its contracting partner as a prerequisite to establishing fraud.

---

[o]n the one hand, the innocent misrepresentation rule differs in eliminating the *scienter* and proof of the intention that the misrepresentation be acted upon. However, on the other hand, the innocent misrepresentation rule adds the requirements that the misrepresentation be made in connection with making a contract and the injury suffered by the victim must inure to the benefit of the misrepresenter. Actually what this means is this: while it is unnecessary to show that the innocent misrepresenter knew his representation was false, it is necessary to show that not only does the victim suffer injury, but also the injury must inure to the misrepresenter's benefit. It also means . . . that it is unnecessary to prove separately that the representer intended that the victim rely on the misrepresentation, because the representation must be made "in a transaction between them", where the misrepresenter should realize that the misrepresentation would be relied upon.

8

The legal and equitable remedies for fraud are manifold. Fraud in the procurement of the contract may be grounds for monetary damages in an action at law, see generally *Hord v Environmental Research Institute of Mich*, 463 Mich 399; 617 NW2d 543 (2000), or, as Titan requests in the instant case, grounds to retroactively avoid contractual obligations through traditional legal and equitable remedies such as cancellation, rescission, or reformation, see, e.g., *United States Fidelity*, 412 Mich at 118 n 10. However, because a contract must always be construed to satisfy relevant provisions of law, *Rohlman*, 442 Mich at 524-525, such remedies may be limited or narrowed by statute. For example, the no-fault automobile insurance act, MCL 500.3101 *et seq*., limits the ability of a licensed insurer to "cancel" automobile coverage after a policy has been in effect for at least 55 days. See MCL 500.3220. Similarly, in certain circumstances, the financial responsibility act, MCL 257.501 *et seq*., limits the ability of an insurer to avoid liability on the ground of fraud in obtaining a motor vehicle liability policy with respect to insurance required by the financial responsibility act. See MCL 257.520(f)(1) ("The liability of the insurance carrier with respect to the insurance required by this chapter shall become absolute whenever injury or damage covered by said motor vehicle liability policy occurs; . . . [and] no fraud, misrepresentation, assumption of liability or other act of the insured in obtaining or retaining such policy . . . shall constitute a defense as against such judgment creditor.").

Several appellate decisions of this state have suggested that MCL 257.520 applies to *all* liability insurance policies. For example, in *State Farm Mut Auto Ins Co v Sivey*, 404 Mich 51, 57; 272 NW2d 555 (1978), this Court indicated that MCL 257.520(b)(2) applies to "*all* policies of liability insurance[.]" (Emphasis added.) In addition, in

9

*Farmers Ins Exch v Anderson*, 206 Mich App 214, 220; 520 NW2d 686 (1994), the Court of Appeals indicated that "when an accident occurs in this state, the scope of liability coverage is determined by the financial responsibility act." See also *League Gen Ins Co v Budget Rent-A-Car of Detroit*, 172 Mich App 802, 805; 432 NW2d 751 (1988) ("When an accident occurs in this state, the scope of the liability coverage required in an insurance policy is determined by Michigan's financial responsibility act[.]"). However, none of these decisions undertook a close analysis of this issue.

We have closely reviewed MCL 257.520(f)(1), and we believe that the statute does not *in every case* limit the ability of an automobile insurer to avoid liability on the ground of fraud; its reference to "motor vehicle liability policy" is not all encompassing. Rather, as used in MCL 257.520(f)(1), "motor vehicle liability policy" refers only to an "owner's or an operator's policy of liability insurance, certified as provided in [MCL 257.518] or [MCL 257.519] as proof of financial responsibility . . . ." MCL 257.520(a). Thus, *absent* this certification, MCL 257.520(f)(1) has no relevant application. Further, MCL 257.520(f)(1) refers only to "the insurance *required by this chapter*," (emphasis added), and the only insurance required by chapter V of the Michigan Vehicle Code is insurance "certified as provided in [MCL 257.518] or [MCL 257.519] as proof of financial responsibility . . . ." MCL 257.520(a). Therefore, as we stated in *Burch v Wargo*, 378 Mich 200, 204; 144 NW2d 342 (1966), MCL 257.520 "applies only when 'proof of financial responsibility for the future' . . . is statutorily required . . . ." See also MCL 257.522 ("This chapter shall not be held to apply to or affect policies of automobile insurance against liability which may now or hereafter be required by any other law of this state . . . ."); and *State Farm Mut Auto Ins Co v Ruuska*, 412 Mich 321, 336 n 7; 314

10

NW2d 184 (1982) ("[I]n discussing the requisites for an automobile liability policy issued as proof of future financial responsibility, the Legislature [in MCL 257.520(b)], after requiring an owner's policy to designate by explicit description or appropriate reference all covered motor vehicles, limited the liability coverage to only those automobiles listed in the policy by speaking in terms of the use of 'such' vehicle(s)."). For these reasons, we now clarify that MCL 257.520(f)(1) does not apply to a motor vehicle liability insurance policy unless it has been certified under MCL 257.518 or MCL 257.519 and, to the extent that *Sivey*, *Anderson*, and *League* suggest otherwise, they are overruled.[6]

## C. EASILY ASCERTAINABLE

The principal question presented in this case is whether an insurer may avail itself of traditional legal and equitable remedies to avoid liability under an insurance policy on the ground of fraud in the application for insurance, when the fraud was easily ascertainable and the claimant is a third party. As an initial matter, we note that this precise question was addressed in 1959 in *Keys*, 358 Mich 74. In *Keys*, the plaintiff, a third party, was involved in a motor vehicle accident with the defendant, who was insured by the Detroit Automobile Inter-Insurance Exchange (DAIIE). The plaintiff filed suit against the defendant for injuries that she had sustained in the accident. While the suit was pending, the DAIIE notified the defendant that it considered the policy void *ab initio*

---

[6] The dissent's approach of "adopt[ing] the Court of Appeals' well-reasoned opinion in its entirety" would do utterly nothing to address the conflict between our decisions in *Burch* and *Sivey*. *Post* at 3. This conflict is jurisprudentially significant and deserves some reasonable resolution.

11

because it was discovered that he had misrepresented a material fact in the application for insurance, namely, that he had falsely stated that his license had not been suspended within the past three years, when, in fact, it had been. Thereafter, judgment was entered in favor of the plaintiff.

After securing her judgment, the plaintiff filed an affidavit for a writ of garnishment against the DAIIE, which opposed the writ arguing that it had no duty to indemnify the defendant because the policy was void *ab initio* as a result of the material misrepresentation. This Court agreed and held that the defendant's material misrepresentation entitled the insurer to avoid liability under the policy. *Id*. at 82-83. In so holding, *Keys* rejected the plaintiff's argument that the insurer had ratified the policy, or, alternatively, had waived its right to avoid liability, because it had failed to declare the policy void at or near the time of the accident, when the insurer could have used available records to discover the misrepresentation. Writing for a unanimous Court, Justice SMITH stated as follows:

> What the [plaintiff's] arguments respecting waiver, ratification, estoppel and so forth actually boil down to is simply that this Court should say that the occurrence of the accident itself should have put the insurer on notice of possible fraud and caused its search of the court files for past traffic violations. If it had done so, it is said, it would have discovered the falsehood. Should we hold that the mere occurrence of an accident is sufficient to place such a burden on the insurer with respect to each of its thousands of policy holders? Rather, is the insurer not entitled to give credence to its insured's honesty until it has actual notice that he is a scoundrel? Moreover, if inquiry is to be demanded, is it enough to stop with the traffic court? Might not the accident suggest physical or psychiatric defects? Should investigations not also be made of the past hospitalizations of the insured? Where will we say this may stop within the existing economic framework? It is doubtful whether one who deliberately sets out to swindle an insurance company can be prevented from so doing by any such requirement, and it is even more doubtful that there is enough of this

12

practice to warrant the placing upon the insurance business of a requirement so onerous.

> The short answer to the arguments of waiver and estoppel is that a litigant cannot be held estopped to assert a defense, or to have waived his right thereto, because of facts he does not know, unless, as a matter of judicial policy, we are ready to say he "should" know them. This we can always do, of course, but there is nothing before us as a matter of fact or of sound policy, to warrant imposition of such knowledge. This is not to say, of course, that one may wilfully close his eyes to that which others clearly see. But nothing of the sort is here before us. In fact, when actual knowledge was gained, the insurer was not slow to act, cancelling the policy *ab initio* and withdrawing its legal representation of the insured. Such action was well justified. [*Id.* at 84-85.]

Thus, *Keys* answered the precise question presented in this case in the affirmative, holding that an insurer may avail itself of traditional legal and equitable remedies to avoid liability under an insurance policy on the ground of fraud, notwithstanding that the fraud may have been easily ascertainable, and notwithstanding that the claimant is a third party.

However, despite *Keys*, the Court of Appeals in *Kurylowicz*, on similar facts, reached a different conclusion. In *Kurylowicz*, the insured sought insurance coverage for his automobile from State Farm. In filling out the application for insurance, he misrepresented the fact that his driver's license had been suspended. Thereafter, the insured was involved in an automobile accident that killed one person and injured five others. The decedent's estate commenced an action against the insured, and State Farm filed a declaratory judgment action contending that it had no duty to indemnify the insured for injuries that he may have caused because, given the material misrepresentation in the application, the policy was void *ab initio*. The trial court rejected State Farm's request for declaratory relief, and the Court of Appeals affirmed. In

so holding, the Court of Appeals rejected State Farm's argument that *Keys* was controlling. Although acknowledging that *Keys* had never been overruled, the *Kurylowicz* panel disregarded this precedent, stating that it was "interesting to note that no Michigan appellate court has seen fit to cite this case since it was released in 1959." *Kurylowicz*, 67 Mich App at 572. Moreover, the panel concluded that *Keys* was inapplicable "in light of the intervening legislation [the no-fault act] and the public policy of the State of Michigan which such legislation implies . . . ." *Id.* at 577.

*Kurylowicz* surveyed the caselaw of other jurisdictions and, finding the reasoning in those cases persuasive, approvingly quoted a California case: "[A]n automobile liability insurer must undertake a reasonable investigation of the insured's insurability within a reasonable period of time from the acceptance of the application and the issuance of a policy. This duty directly inures to the benefit of third persons injured by the insured.'" *Id.* at 576, quoting *Barrera v State Farm Mut Auto Ins Co*, 71 Cal 2d 659, 663; 79 Cal Rptr 106; 456 P2d 674 (1969). Ultimately, *Kurylowicz* held that "where an automobile liability insurer retains premiums, notwithstanding grounds for cancellation reasonably discoverable by the insurer . . . , the insurer will be estopped to assert that ground for rescission thereafter." *Kurylowicz*, 67 Mich App at 579.

The *Kurylowicz* rule has become known as the "easily ascertainable" rule, and, as the Court of Appeals noted in this case, it only applies when a third-party claimant is involved. That is, under the *Kurylowicz* rule, an insurer may not avail itself of traditional legal and equitable remedies to avoid liability under an insurance policy on the ground of fraud when the fraud was easily ascertainable and the claimant is a third party. See, e.g., *Ohio Farmers Ins Co v Mich Mut Ins Co*, 179 Mich App 355; 455 NW2d 228 (1989).

However, when it is the insured who seeks benefits under an insurance policy procured through fraud, even an easily ascertainable fraud will not preclude an insurer from availing itself of traditional legal and equitable remedies to avoid liability. See *Hammoud v Metro Prop & Cas Ins Co*, 222 Mich App 485; 563 NW2d 716 (1997).

## D. *KURYLOWICZ* REJECTED

Not only did *Kurylowicz* clearly err by disregarding *Keys*,[7] it also clearly erred by concluding that its purported justifications for the "easily ascertainable" rule warranted departing from the common-law rule articulated in *Keys*.

First, *Kurylowicz* justified the "easily ascertainable" rule on the basis of its understanding of the "public policy" of Michigan. In light of the Legislature's then recent passage of the no-fault act, MCL 500.3101 *et seq*., *Kurylowicz* reasoned that

> the policy of the State of Michigan regarding automobile liability insurance and compensation for accident victims emerges crystal clear. It is the policy of this state that persons who suffer loss due to the tragedy of automobile accidents in this state shall have a source and a means of recovery. Given this policy, it is questionable whether a policy of automobile liability insurance can ever be held void *ab initio* after injury covered by the policy occurs. [*Kurylowicz*, 67 Mich App at 574.]

This "public policy" rationale does not compel the adoption of the "easily ascertainable" rule. In reaching its conclusion, *Kurylowicz* effectively replaced the actual provisions of the no-fault act with a generalized summation of the act's "policy." Where, for example, in *Kurylowicz*'s statement of public policy is there any recognition of the Legislature's

---

[7] Although *Keys* was raised by the parties, although *Keys* governed the precise issue before it, and although this Court's unanimous opinion in *Keys* had never been overruled, *Kurylowicz*, nonetheless, ignored its authority because "no Michigan appellate court has seen fit to cite [*Keys*] since it was released in 1959." *Kurylowicz*, 67 Mich App at 572.

explicit mandate that, with respect to insurance required by the act, "no fraud, misrepresentation, . . . or other act of the insured in obtaining or retaining such policy . . . shall constitute a defense" to the payment of benefits?  MCL 257.520(f)(1).  We believe that the policy of the no-fault act is better understood in terms of its actual provisions than in terms of a judicial effort to identify some overarching public policy and effectively subordinate the specific details, procedures, and requirements of the act to that public policy.  In other words, it is the policy of this state that all the provisions of the no-fault act be respected, and *Kurylowicz*'s efforts to elevate *some* of its provisions and *some* of its goals above other provisions and other goals was simply a means of disregarding the stated intentions of the Legislature.  The no-fault act, as with most legislative enactments of its breadth, was the product of compromise, negotiation, and give-and-take bargaining, and to allow a court of this state to undo those processes by identifying an all-purpose public policy that supposedly summarizes the act and into which every provision must be subsumed, is to allow the court to act beyond its authority by exercising what is tantamount to legislative power.  Third-party victims of automobile accidents have a variety of means of recourse under the no-fault act, and it is to those means that such persons must look, not to a judicial articulation of policy that has no specific foundation in the act itself and was designed to modify and supplant the details of what was actually enacted into law by the Legislature.

Second, it is claimed that the "easily ascertainable" rule complements MCL 500.3220, which provides:

> Subject to the following provisions no insurer licensed to write automobile liability coverage, after a policy has been in effect 55 days or if the policy is a renewal, effective immediately, shall cancel a policy of

16

automobile liability insurance except for any 1 or more of the following reasons:

> (a) That during the 55 days following the date of original issue thereof the risk is unacceptable to the insurer.

> (b) That the named insured or any other operator, either resident of the same household or who customarily operates an automobile insured under the policy has had his operator's license suspended during the policy period and the revocation or suspension has become final.

The Court of Appeals panel below reasoned that

> MCL 500.3220(a) contemplates that no-fault insurers may cancel coverage within 55 days of a policy's issuance if "the risk is unacceptable to the insurer." Alternatively phrased, an insurer may make its own risk assessment, without statutorily imposed restrictions. However, the Legislature limited to 55 days the period in which an insurer can make its risk assessment. We conclude that MCL 500.3220(a) evidences the intent to afford no-fault insurers a definite window of time in which to investigate an insured for the purpose of assessing risk. Stated differently, MCL 500.3220(a) envisions that no-fault insurers will either perform an investigation to determine whether to accept a new risk or forfeit the opportunity to later decide that an insured's driving record or other characteristic should require cancellation of the policy. [*Hyten I*, 291 Mich App at 460-461.]

We agree with the Court of Appeals that MCL 500.3220(a) shows an intent to allow insurers only a limited period during which to reassess the risk after the formation of a policy and when the risk is deemed unacceptable to "cancel" the policy. However, we disagree that when an insurer elects *not* to reassess the risk and later uncovers fraud, it is somehow precluded from pursuing traditional legal and equitable remedies in response.[8]

---

[8] The flaw in the Court of Appeals' reasoning is further highlighted by the fact that it would apparently hold that MCL 500.3220, despite nothing even approximating such language, envisions that insurers will investigate an insured, *but* will only do so when the claimant is a third party and not when the claimant is the insured. See *Hammoud*, 222 Mich App 485. How does any of this policy reasonably derive from the actual statute in controversy?

17

Risk assessment and the uncovering of fraud are distinct insurance processes and are not logically interrelated in a manner that would reasonably suggest that any statute addressing one of these processes necessarily addresses the other. Nor within MCL 500.3220(a), in particular, are these processes joined together by any specific language. MCL 500.3220 limits an insurer's ability to "cancel" an insurance policy after it has been in effect for 55 days. In contract law, "cancellation" has acquired a peculiar and appropriate meaning in the law.[9] "When a policy is cancelled, it is terminated as of the cancellation date and is effective up to such date[.]" *United Security Ins Co v Ins Comm'r*, 133 Mich App 38, 42; 348 NW2d 34 (1984) (citation and quotation marks omitted). Other remedies have also acquired their own peculiar and appropriate meanings in the law, including "rescission" and "reformation." See, e.g., *Lash v Allstate Ins Co*, 210 Mich App 98, 102; 532 NW2d 869 (1995); *Mate v Wolverine Mut Ins Co*, 233 Mich App 14, 24; 592 NW2d 379 (1998). Each is conceptually different in its nature and in its breadth from the others, and to interpret "cancellation" as encompassing a broader range of contractual remedies is simply without basis in the statute.[10]

---

[9] See MCL 8.3a ("All words and phrases shall be construed and understood according to the common and approved usage of the language; but technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.").

[10] Accord *United Sec Ins Co*, 133 Mich App at 42 (holding that under MCL 500.3024, "[r]escission is insufficiently similar to cancellation to support the conclusion that the Legislature's enactment of a statute controlling cancellation of an automobile insurance policy without mentioning rescission demonstrates the Legislature's intent to preclude rescission").

18

Third, it is contended that the "easily ascertainable" rule is required for the protection of third parties.[11] However, there is simply no basis in the law to support the proposition that public policy requires a private business in these circumstances to maintain a source of funds for the benefit of a third party with whom it has no contractual relationship.[12] While perhaps authority exists in the Legislature to enact such a law, see, e.g., MCL 500.3172 (pertaining to the Michigan Assigned Claims Facility), this authority has not been exercised by the Legislature in this instance. The no-fault act seeks to protect third parties in a variety of ways, including through tort actions, but it states nothing about altering the common law that enables insurers to obtain traditional forms of relief when they have been the victims of fraud. We are not oblivious to the fact that adoption of the "easily ascertainable" rule might in some cases protect a potential source of monetary recovery for persons bringing tort claims, but this does not by itself justify a rule that alters first principles of contract formation, redefines the common-law concept of fraud, reduces disincentives for insurance fraud, and transfers legal responsibility from

---

[11] *Ohio Farmers Ins Co*, 179 Mich App at 364-365 ("[B]asic public policy considerations require that, once an innocent third party is injured in an accident in which coverage is in effect on the automobile, an insurer will be estopped from asserting rescission as a basis upon which it may limit its liability to the statutory minimum."); *Kurylowicz*, 67 Mich App at 576 (holding that the insurer's duty to undertake a reasonable investigation "directly inures to the benefit of third persons injured by the insured"), quoting *Barrera*, 71 Cal 2d at 663.

[12] See *Terrien v Zwit*, 467 Mich 56, 66; 648 NW2d 602 (2002) ("In defining 'public policy,' it is clear to us that this term must be more than a different nomenclature for describing the personal preferences of individual judges, for the proper exercise of the judicial power is to determine from objective legal resources what policy *is*, and not to simply assert what such policy *ought* to be on the basis of the subjective views of individual judges.").

parties that have acted fraudulently to parties that have not. Absent insurance, the operator of the motor vehicle is personally liable for tort liability. By requiring an insurer to indemnify an insured despite fraud in obtaining an insurance policy, the "easily ascertainable" rule relieves the insured of what would otherwise be the insured's personal obligation in the face of his or her own misconduct. As between the fraudulent insured and the insurer, there can be no question that the former should bear the burden of his or her fraud.[13]

Having concluded that the purported justifications do not support the "easily ascertainable" rule, we overrule *Kurylowicz* and its progeny, there being nothing in the law to warrant the establishment or imposition of an "easily ascertainable" rule.[14]

### E. *KEYS* REAFFIRMED

Although *Keys* was decided before the no-fault act became law, we take this opportunity to reaffirm the principles stated therein, *to wit*, that an insurer has no duty to investigate or verify the representations of a potential insured. See *Keys*, 358 Mich at 84-85. Furthermore, as we held in *Keys*:

---

[13] It should be noted that the public is not powerless to protect itself against this situation. Optional uninsured-motorist coverage allows an insured to recover from his or her own insurer to the extent that the insured would have been permitted to recover from an at-fault uninsured driver. In this case, the Holmeses, in fact, purchased this additional coverage.

[14] Contrary to the assertions of the dissenting justices, it is *they* who would "discard" precedent pertaining to the "easily ascertainable" rule. In *Keys*, this Court *unanimously* held that insurers have no duty to investigate the representations of a potential insured. Yet the dissenting justices would apparently overrule *Keys* and adopt the "easily ascertainable" rule, which was subsequently created by the Court of Appeals despite there having been absolutely no relevant change in the law.

The short answer to the arguments of waiver and estoppel is that a litigant cannot be held estopped to assert a defense, or to have waived his right thereto, because of facts he does not know, unless, as a matter of judicial policy, we are ready to say he "should" know them. This we can always do, of course, but there is nothing before us as a matter of fact or of sound policy, to warrant imposition of such knowledge. [*Id.* at 84.]

The *Keys* rule, which allows an insurer to avail itself of a legal or equitable remedy on the ground of fraud in the application for insurance, notwithstanding that the claimant is a third party and the fraud could have been discovered through further investigation, comports with the long-established understanding of fraud in Michigan .

As already noted, it is well settled in Michigan that fraud in the application for an insurance policy may allow the blameless contracting party to avoid its contractual obligations through the application of traditional legal and equitable remedies. Michigan's common law has consistently defined the elements of fraud without reference to whether the fraud could, upon the exercise of reasonable diligence in carrying out further investigation, have been discovered by the party claiming that it was harmed by the fraud. See *Candler*, 208 Mich at 121 (defining the elements of actionable fraud); *United States Fidelity*, 412 Mich at 115-116 (defining the elements of innocent misrepresentation), quoting *Holcomb*, 69 Mich at 399 (MORSE, J., concurring); and *Tompkins*, 60 Mich at 480, 483 (defining the elements of silent fraud). To hold an insurer to a different and higher standard, one that would require it affirmatively to investigate the veracity of all representations made by its contracting partners before it could avail itself of these remedies, would represent a substantial departure from the well-established understanding of fraud. We discern no basis for treating insurers differently from all other parties who enter into contracts in this state.

21

For these reasons, we reaffirm the principles set forth in *Keys* and hold that an insurer is not precluded from availing itself of traditional legal and equitable remedies to avoid liability under an insurance policy on the ground of fraud in the application for insurance, even when the fraud was easily ascertainable and the claimant is a third party.[15]

## F. APPLICATION

Titan alleges that Hyten's representation that no member of her household had any unlicensed drivers or any drivers with a suspended or revoked driver's license was fraudulent. To establish actionable fraud, Titan bears the burden of proving that (1) Hyten made a material misrepresentation; (2) it was false; (3) when she made it, she knew it was false, or else made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) she made it with the intention that it should be acted on by Titan; (5) Titan acted in reliance on it; and (6) Titan thereby suffered injury. See *Candler*, 208 Mich at 121. Titan argues that all the elements of actionable fraud are satisfied; however, it is unclear whether the trial court-- before finding that the alleged misrepresentation was easily ascertainable-- found that all the elements of actionable fraud had been satisfied. Therefore, we remand this case to the trial court for further proceedings in accordance with the standards set forth in this opinion.[16]

---

[15] We also take note of the difficulties under *Kurylowicz* of determining what nature of "reasonable investigation" would satisfy the "easily ascertainable" rule and whether such an investigation would have to be undertaken in connection with every representation in an insurance application that might later come to be viewed as material.

[16] As an alternative rationale for its holding, the Court of Appeals, relying on 1 Restatement Contracts, 2d (1981), § 165, pp 448-449, concluded that Hyten had

Should Titan prevail on its assertion of actionable fraud, it may avail itself of a traditional legal or equitable remedy to avoid liability under the insurance policy, notwithstanding that the fraud may have been easily ascertainable. However, as discussed earlier in this opinion, the remedies available to Titan may be limited by statute. *Rohlman*, 442 Mich at 525 n 3.[17]

## IV. CONCLUSION

In accordance with our longstanding jurisprudence before *Kurylowicz*, an insurer may seek to avoid liability under an insurance policy using traditional legal and equitable remedies including cancellation, rescission, or reformation, on the ground of fraud made in an application for insurance, notwithstanding that the fraud may have been easily ascertainable and the claimant is a third party. This rule is consistent with Michigan's well-settled understanding of fraud. Accordingly, we overrule *Kurylowicz*, 67 Mich App 568, and its progeny, there being nothing in the law to warrant the establishment or imposition of an "easily ascertainable" rule. Because the Court of Appeals relied on *Kurylowicz* and its progeny, we reverse the judgment of the Court of Appeals. Further, because it is unclear whether the trial court found that the insured obtained her policy

---

retroactively "cured" her misrepresentation by obtaining her driver's license after the application but before the accident. *Hyten I*, 291 Mich App at 465-466. However, the Court of Appeals' application of the "cure" doctrine was improper because it was neither raised by the parties nor addressed by the trial court. Moreover, this section of the Restatement has never been adopted in Michigan, and we decline do so at this juncture without the benefit of full briefing and arguments.

[17] For example, MCL 500.3009(1) provides the policy coverage minimums for all motor vehicle liability insurance policies.

through fraud, we remand to the trial court for further proceedings in accordance with this opinion.

Stephen J. Markman
Robert P. Young, Jr.
Mary Beth Kelly
Brian K. Zahra

STATE OF MICHIGAN

SUPREME COURT

TITAN INSURANCE COMPANY,

       Plaintiff-Appellant,

v

No. 142774

McKINLEY HYTEN, HOWARD
HOLMES, and MARTHA HOLMES

       Defendants-Appellees,

and

FARM BUREAU INSURANCE
COMPANY,

       Intervening Defendant-
       Appellee.

---

HATHAWAY, J. (*dissenting*).

I would affirm the Court of Appeals' well-reasoned opinion in this case. I believe that the "easily ascertainable" rule should remain the law of this state because it is soundly based in existing caselaw and this state's policy regarding automotive liability insurance and compensation for innocent third-party accident victims.

Judges in numerous cases have considered the "easily ascertainable" rule and have concluded that it is consistent with this state's policies. Today, however, the majority discards the analyses of those judges and overrules the unanimous opinion of this Court in *State Farm Mut Auto Ins Co v Sivey*, 404 Mich 51; 272 NW2d 555 (1978); the unanimous Court of Appeals opinion in *State Farm Mut Auto Ins Co v Kurylowicz*, 67

Mich App 568; 242 NW2d 530 (1976); the unanimous Court of Appeals opinion in *Ohio Farmers Ins Co v Mich Mut Ins Co*, 179 Mich App 355; 445 NW2d 228 (1989); the unanimous Court of Appeals opinion in *Farmers Ins Exch v Anderson*, 206 Mich App 214; 520 NW2d 686 (1994); the unanimous Court of Appeals opinion in *Manier v MIC Gen Ins Corp*, 281 Mich App 485; 760 NW2d 293 (2008); and the unanimous decision by the Court of Appeals pertaining to the facts of this case.[1]

Together, those cases represent 36 years of thoughtfully analyzed and legally sound caselaw interpreting the no-fault act.[2] The majority overrules this entire body of caselaw despite the fact that there have been no amendments of any relevant statute that would indicate that the Legislature intended to do away with the "easily ascertainable" rule.

I would affirm the judgment of the Court of Appeals because it went through a careful and correct analysis of the statutory and common-law underpinnings of the rule and the reasons why the rule is necessary. Furthermore, the Court of Appeals correctly applied the rule in this case to hold that plaintiff, Titan Insurance Company, cannot reform its insurance policy in order to avoid the maximum liability owed under the policy

---

[1] *Titan Ins Co v Hyten*, 291 Mich App 445; 805 NW2d 503 (2011).

[2] MCL 500.3101 *et seq.*

to the innocent third-party defendants, Howard and Martha Holmes.  Accordingly, I would adopt the Court of Appeals' well-reasoned opinion in its entirety.

Diane M. Hathaway
Michael F. Cavanagh
Marilyn Kelly