# STATE OF MICHIGAN

# COURT OF APPEALS

ELECTRIC STICK, INC.,

       Plaintiff-Appellee,

v

PRIMEONE INSURANCE COMPANY,

       Defendant-Appellant.

and

KAPLANI INSURANCE AGENCY, INC.,

       Defendant.

UNPUBLISHED
September 15, 2016

No. 327421
Wayne Circuit Court
LC No. 14-003564-CK

Before: CAVANAGH, P.J., and SAAD and FORT HOOD, JJ.

PER CURIAM.

Defendant, Primeone Insurance Company, appeals by leave granted the trial court's order denying its motion for summary disposition. We reverse and remand for entry of summary disposition in favor of defendant.

On appeal, defendant contends that the trial court erred in denying its motion for summary disposition where the record evidence did not create a genuine issue of material fact concerning whether plaintiff engaged in fraud when completing an application for insurance with defendant. We agree.

"This Court reviews the grant or denial of summary disposition de novo to determine if the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). "In reviewing a motion brought under MCR 2.116(C)(10), we review the evidence submitted by the parties in a light most favorable to the nonmoving party to determine whether there is a genuine issue regarding any material fact." *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270-271; 826 NW2d 519 (2012).

"[I]t is well settled in Michigan that fraud in the application for an insurance policy may allow the blameless contracting party to avoid its contractual obligations through the application of traditional legal and equitable remedies." *Titan Ins Co v Hyten*, 491 Mich 547, 570; 817 NW2d 562 (2012). Insurance policies are contracts, and, thus, common-law defenses may be

-1-

invoked to avoid enforcement of an insurance policy, including duress, waiver, estoppel, fraud, and unconscionability. *Id.* at 554-555. This case deals with allegations of fraud. "Michigan's contract law recognizes several interrelated but distinct common-law doctrines—loosely aggregated under the rubric of 'fraud'—that may entitle a party to a legal or equitable remedy if a contract is obtained as a result of fraud or misrepresentation," including "actionable fraud, also known as fraudulent misrepresentation; innocent misrepresentation; and silent fraud, also known as fraudulent concealment." *Id.* at 555. Defendant argued it was entitled to relief based on all three types of fraud, and we agree.

The trial court denied defendant's motion for summary disposition, holding that there was a question of fact whether plaintiff misrepresented information to defendant or fraudulently concealed information. Relevantly, the application included a number of questions, and it directed the applicant to explain any "yes" responses. Among the questions was the following: "Any bankruptcies, tax or credit liens against the applicant in the past five (5) years?" Plaintiff answered "Yes" to this question, and explained: "The bankruptcy has been dismissed in 2011." It was later revealed that plaintiff's answer was, minimally, incomplete, and failed to disclose additional bankruptcies as well as tax liens. Below, the trial court stated that it was not "clear" whether such a response would amount to a misrepresentation or fraudulent concealment. The trial court went on to observe that "[t]his is especially true in light of the fact that plaintiff made all its financial information available for review to" defendant's employee Deborah Kaplani, which in turn would have been available to defendant.

Initially, it is clear from the trial court's ruling that its ultimate determination hinged on its observation that defendant had access to plaintiff's financial records, yet did not thoroughly review the information. However, in *Titan*, our Supreme Court held that "an insurer has no duty to investigate or verify the representations of a potential insured." *Id.* at 570. In discussing this proposition, the *Titan* Court explained that "Michigan's common law has consistently defined the elements of fraud without reference to whether the fraud could, upon the exercise of reasonable diligence in carrying out further investigation, have been discovered by the party claiming that it was harmed by the fraud." *Id.* Thus, the Court declined to hold insurers "to a different and higher standard, one that would require it affirmatively to investigate the veracity of all representations made by its contracting partners before it could avail itself of these remedies, [because it] would represent a substantial departure from the well-established understanding of fraud." *Id.* at 571.[1]

---

[1] A current dispute is ongoing in this Court that is peripherally related to this legal proposition. However, the dispute involves cases arising from no-fault automobile insurance, and specifically involves the distinction and viability of the "easily ascertainable" rule, articulated in *Titan*, 491 Mich at 572-573, and the "innocent third-party rule," *Lake States Ins Co v Wilson*, 231 Mich App 327, 331; 586 NW2d 113 (1998). *Bazzi v Sentinel Ins Co*, ___ Mich App ___; ___ NW2d ___ (2016) (Docket No. 320518); *Southeast Mich Surgical Hosp, LLC v Allstate Ins Co*, ___ Mich App ____; ___ NW2d ___ (2016) (Docket No. 323425). Because these concepts are not at issue here, we do not discuss these issues further, but merely note them for completeness.

Thus, the trial court's conclusion, that defendant bore some responsibility to verify the accuracy of plaintiff's representations on its application for insurance, simply does not comport with Michigan Supreme Court precedent, or authority from this Court, and therefore amounts to legal error. In other words, to successfully advance the claims of fraudulent misrepresentation, innocent misrepresentation, and fraudulent concealment, defendant was not required "to have performed an investigation of all assertions and representations made by its contracting partner as a prerequisite to establishing fraud." *Id*. at 557.

We further hold that defendant put forth ample evidence to support its claims of fraud. First, we believe defendant put forth evidence to support the elements of fraudulent misrepresentation.

"It is the well-settled law of this state that where an insured makes a material misrepresentation in the application for insurance, . . . the insurer is entitled to rescind the policy and declare it void ab initio." *Lake States Ins Co v Wilson*, 231 Mich App 327, 331; 586 NW2d 113 (1998).

> Regarding actionable fraud, the general rule is that to constitute actionable fraud it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery. [*Titan*, 491 Mich at 555 (citations omitted).]

Here, the record evidence demonstrated that plaintiff made a false material representation when it limited its answer on the insurance application to only one bankruptcy proceeding, failing to disclose the additional bankruptcy proceedings that it was involved in during the prior five years. Plaintiff also chose not to disclose the substantial tax liens that the state of Michigan had filed against it. Assuredly, plaintiff is hard-pressed to argue that it did not know these representations were false when made, especially when George A. Marvaso, an owner of plaintiff, conceded during his deposition that he was indeed aware of the multiple bankruptcy proceedings, the multiple state tax liens involving plaintiff, and could not give a plausible explanation regarding why this information was not provided to defendant. As plaintiff was seeking to secure a policy of insurance, and had recently been declined quotations for insurance by two other insurance companies before it submitted its application to defendant,[2] it is also a reasonable conclusion that plaintiff made the representations with the intention that defendant would rely on them in issuing an insurance policy. Finally, defendant did act in reliance on the false representations, as it issued a policy of insurance, and has incurred injury where plaintiff now seeks a payout of the insurance proceeds.

---

[2] Notably, plaintiff also failed to disclose that it had been denied insurance by two other companies within three years of the application.

Plaintiff asserts that any false representation was not material. In support of this argument, plaintiff notes that (1) defendant's underwriting guidelines do not expressly take into account a potential insured's financial situation, (2) defendant's vice-president of underwriting, Donald Snyder, conceded that after his discussions with Kaplani regarding plaintiff's bankruptcy reported on the insurance application, the disclosed bankruptcy did not have any impact on his underwriting decision, and (3) Snyder stated that defendant did not prohibit insuring parties who had undergone a bankruptcy. This argument is simply not convincing. Plaintiff fails to acknowledge that Snyder concluded that the reported bankruptcy would not impact his underwriting decision only after he was advised that it was dismissed, leading him to infer that the courts had dispensed with the matter, plaintiff's substantial debts had been paid and that plaintiff was in a financially neutral, if not better, position. Snyder also testified that the existence of a bankruptcy would weigh heavily in determining a potential insured's financial situation, particularly with regard to how a business is managed, and can indicate a susceptibility to arson. Similarly, Snyder stated that if defendant were aware of the additional corporate bankruptcy proceedings plaintiff was involved in, this would have resulted in a higher premium, if defendant had even agreed to insure plaintiff. Snyder also stated that plaintiff's failure to disclose the existence of the tax liens was significant, as it would have been a consideration concerning the strain on plaintiff financially. In the same vein, defendant's vice-president, Lauretta Pominville, stated during her deposition that the existence of bankruptcy proceedings and tax liens for an insurance applicant constitutes "part of the total equation" defendant considers when determining whether to issue an insurance policy. Accordingly, defendant was entitled to summary disposition on the basis of actionable fraud.

We further conclude that defendant also made a showing of fraudulent concealment, which requires the same elements of fraudulent misrepresentation, with the difference being that "it is based on a defendant suppressing a material fact that he or she was legally obligated to disclose, rather than making an affirmative misrepresentation." *Alfieri v Bertorelli*, 295 Mich App 189, 193; 813 NW2d 772 (2012). Silent fraud requires that plaintiff owe a legal duty to defendant, *id.*, and such duty arises when a question is asked, and the responding party responds in an incomplete manner, with answers that are partially truthful, but omits material information. *Mable Cleary Trust v Edward-Marlah Muzyl Trust*, 262 Mich App 485, 500; 686 NW2d 770 (2004), overruled on other gds *Titan*, 491 Mich at 555 n 4. In this case, a legal duty undoubtedly arose where plaintiff disclosed the 2011 bankruptcy, but failed to provide information regarding its other corporate bankruptcies and the substantial state tax liens.

Finally, defendant also successfully asserted the defense of innocent misrepresentation as a basis for rescission of the insurance policy. "A claim of innocent misrepresentation is shown if a party detrimentally relies upon a false representation in such a manner that the injury suffered by that party inures to the benefit of the party who made the representation." *M & D, Inc v WB McConkey*, 231 Mich App 22, 27; 585 NW2d 33 (1998). Even if it can be said that plaintiff did not have a fraudulent purpose or intention in failing to provide full disclosure of the relevant facts pertaining to its prior bankruptcies and the existence of state tax liens in response to defendant's questions on the insurance application, the incomplete information represented by plaintiff to defendant was made during the making of a contract, and defendant suffered an injury that inured to plaintiff's benefit where it became liable to pay insurance proceeds to plaintiff as a result. *Id*. at 28.

We reverse and remand for entry of summary disposition in favor of defendant. We do not retain jurisdiction. Defendant, the prevailing party, may tax costs. MCR 7.219.

/s/ Mark J. Cavanagh
/s/ Henry William Saad
/s/ Karen M. Fort Hood