*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

THREE WON THREE, CORP, EIGHTY ATE, LLC, and ATE ATE, LLC,

Plaintiffs-Appellants,

UNPUBLISHED
May 19, 2022

v

No. 356791
Wayne Circuit Court
LC No. 20-011994-CB

PROPERTY-OWNERS INSURANCE COMPANY,

Defendant-Appellee.

Before: BORRELLO, P.J., and SHAPIRO and HOOD, JJ.

PER CURIAM.

Plaintiffs appeal as of right the trial court's order granting summary disposition in favor of defendant under MCR 2.116(C)(8). We affirm.

## I. BACKGROUND

Plaintiffs operate restaurants in Wayne County. In early March 2020, the Department of Health and Human Services identified the first two presumptive cases of severe acute respiratory syndrome coronavirus-2, otherwise known as SARS-CoV-2 (the virus), in Michigan. The virus causes the disease commonly known as COVID-19. The Governor later issued Executive Order 2020-21, which required nonessential workers to remain at home and placed restrictions on in-person businesses. The Governor subsequently issued additional orders that modified the restrictions and extended their duration. According to the complaint, plaintiffs' restaurants were deemed essential businesses under Executive Order 2020-21 and remained open for carryout and delivery services, but were prohibited from offering dine-in services.

Plaintiffs had each purchased a commercial insurance policy from defendant that included business-interruption coverage. The relevant terms of the three policies are identical. Thus, for convenience, we collectively refer to the insurance policies as "the policy."

In September 2020, plaintiffs filed a complaint seeking a declaratory judgment that their losses were covered under the insurance policy, and also alleged breach of contract. Plaintiffs sought coverage under the policy's business-income and civil-authority provisions. In support of

both claims, plaintiffs alleged that the pertinent executive orders prevented customers from entering their restaurants for dine-in services, and thus caused adverse physical and tangible changes to their restaurants. Defendant moved for summary disposition as its first responsive filing, primarily arguing that the complaint should be dismissed because plaintiffs could not show that their business-income losses were caused by physical damage to their restaurants. The trial court agreed and granted defendant's motion. This appeal followed.[1]

## II. DIRECT PHYSICAL LOSS OF, OR DAMAGE TO, PROPERTY

The policy's business-income loss provision provides in part:

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Caused of Loss.

Defendant moved for summary disposition on the ground that the policy provided coverage for loss of business income caused by direct physical loss of, or damage to, property, and that plaintiffs failed to allege such loss or damage. The trial court agreed, determining that this provision required "some direct physical change to or 'some tangible damage' to the property." Plaintiffs argue that the trial court's interpretation of "direct physical loss of or damage to property" was erroneous because that phrase does not require the loss to be related to a structural alteration of the property. They further contend that the executive orders caused a direct physical loss or damage to their restaurants because their restaurants lost habitability and commercial functionality.

The policy provisions at issue in this case and plaintiffs' arguments are virtually identical with the provisions and arguments at issue in *Gavrilides Mgt Co, LLC v Mich Ins Co*, ___ Mich App ___; ___ NW2d ___ (2022) (Docket No. 354418). In that case, the plaintiffs were restaurant operators who submitted an insurance claim for business-interruption losses arising from the COVID-19 pandemic. We affirmed the trial court's grant of summary disposition to the defendant

---

[1] This Court reviews de novo a trial court's decision on a motion for summary disposition. *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013). Under MCR 2.116(C)(8), a party may move for summary disposition if the "opposing party has failed to state a claim on which relief can be granted." Such a motion tests the legal sufficiency of the complaint on the basis of the pleadings. A trial court considering such a motion "must accept all factual allegations as true, deciding the motion on the pleadings alone." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). "A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *Id*. The proper interpretation of a contract presents a question of law subject to review de novo. *Titan Ins Co v Hyten*, 491 Mich 547, 553; 817 NW2d 562 (2012).

insurance company, partly on the basis that the plaintiffs had not shown " 'direct physical loss of or damage to property' " as required by the business-income provision. *Id*. at ___, quoting the policy; slip op at 4. We held that "physical" for purposes of that provision "necessarily requires the loss or damage to have some manner of tangible and measurable presence or effect in, on, or to the premises." *Id*. at ___; slip op at 7. But the "[p]laintiffs' restaurants were unambiguously closed by impersonal operation of a general law, not because anything about or inside the particular premises at issue had physically changed." *Id*. We also observed that the business-income loss provision referred to a "period of restoration," which showed that "the contract expects the loss or damage to be amenable to some kind of physical remediation—either by making tangible alterations or repairs to the premises, or by replacing the premises altogether," and "[n]o alteration to, or replacement of, plaintiffs' premises would have permitted the restaurants to reopen. *Id*. at ___; slip op at 8. We concluded that "defendant properly denied coverage to plaintiffs because the Executive Orders did not result in 'direct physical loss of or damage to property.' " *Id*. at ___; slip op at 9.

*Gavrilides* is binding precedent that we must follow, MCR 7.215(J)(1), and is largely dispositive of the issues raised in the instant appeal. Plaintiffs allege various ways that the executive orders affected their restaurants, but the orders did not result in a "direct physical loss of or damages to property" as defined by *Gavrilides*, i.e., they did not cause or constitute a "tangible and measurable presence or effect in, on, or to the premises." *Gavrilides*, ___ Mich App at ___; slip op at 7.

One distinction between this case and *Gavrilides* is that plaintiffs here allege that the virus was present at their properties. Specifically, plaintiffs alleged that the virus was "probably" present in their restaurants "from time to time causing loss or damage," but conceded that this "loss or damage did not cause most of the business interruption losses or damages because Plaintiffs acted to disinfect and restore the covered properties to mitigate the loss or damage thereto." It is unclear if plaintiffs are pursuing an argument on appeal that the necessary material change to the premises can be based on the physical presence of the virus. *Gavrilides* did not reach the merits of such a claim because the pertinent complaint did not allege that the virus was physically present in the restaurant, and we concluded that any amendment would be futile because even if there was coverage on this basis, any loss would be excluded by the virus exclusion. See *Gavrilides*, ___ Mich App at ___; slip op at 7 n 3, 10. Nonetheless, we found such an argument "questionable because it seemingly describes an *indirect* physical loss or damage, which would be precluded by the word 'direct' in the policy." *Id*. at ___; slip op at 7. We also addressed the effect of the executive orders, explaining that "mandating a more rigorous cleaning regimen" did not constitute damage or loss and observing that the orders "applied to all businesses without regard to whether a single viral particle could be found within." *Id*.

Given the foregoing, even assuming that plaintiffs could somehow prove that the coronavirus was physically present in their restaurants, a claim for coverage on this basis is effectively foreclosed by *Gavrilides*'s conclusion that the kind of losses caused by the virus that plaintiffs alleged—the cost of cleaning surfaces—did not constitute damage or loss under the

policy.[2]  In any event, as discussed in greater detail below, the policy's virus exclusion expressly bars coverage for damage or loss caused by viruses.

## III. CIVIL-AUTHORITY COVERAGE

Plaintiffs also argue that they are entitled to coverage under the policy's civil-authority provision, which provides in relevant part:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from damaged property; and
>
> (2) the action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

The trial court ruled that plaintiffs were not entitled to coverage under this provision because the executive orders did not completely prohibit access to plaintiffs' restaurants. And the court noted that plaintiffs provided "only bare assertions and statements" that the virus caused direct physical loss of, or damage to, properties within one mile of their restaurants. Plaintiffs argue that the court's ruling was erroneous because their complaint alleged that the executive orders affected other properties within one mile of their restaurants, and the virus caused physical loss or damage to all service-sector businesses in Michigan. But, as with plaintiffs' arguments regarding coverage for business-income loss, *Gavrilides* considered and rejected virtually identical arguments.

In *Gavrilides*, we observed that the plaintiffs correctly pointed out that the pertinent provision for civil-authority coverage[3] did "not require any damage to, or indeed any physical

---

[2] *Gavrilides* also concluded that the "plaintiffs' claim would appear to be precluded by Section B(1)(a)(1) of the 'special form,' which states, in relevant part, '[w]e will not pay for loss or damage caused directly or indirectly by . . . [t]he enforcement of any ordinance or law . . . [r]egulating the construction, *use* or repair of any property.' " *Gavrilides*, ___ Mich App at ___, quoting the policy; slip op at 8 (emphasis by *Gavrilides*). Presuming that the executive orders constituted the enforcement of law within the meaning of that section, we concluded that coverage would also be barred by this provision. *Id.* The policy in this case contains an "Ordinance or Law" exclusion identical with the exclusion in the *Gavrilides* policy.

[3] The civil-authority provision in the instant policy is identical with the one at issue in *Gavrilides*.

effect upon, [the] plaintiffs' premises," but explained that the provision unambiguously required damage to nearby property "and none [was] alleged." *Gavrilides*, ___ Mich App at ___; slip op at 8-9. Further, to "the extent access to any neighboring properties was prohibited, that prohibition was a result of a health crisis and the specter of person-to-person transmission of a dangerous virus, irrespective of whether those properties were altered." *Id*. We also noted that "the provision clearly expects a defined area to be cordoned off" and that the executive orders did not do so; "any person who was excepted from the stay-at-home provision of the Executive Orders could, at least in principle, have driven or walked past plaintiffs' restaurants." *Id*. We also concluded that "this provision anticipates a response by a civil authority to some discrete damage or threat of damage" and therefore the alleged civil-authority action could not serve as both the cause of the damage and the response to it. *Id*. For these reasons, the plaintiffs failed to establish that an action of a civil authority prohibited access to their businesses. *Id*.

Unlike the plaintiffs in *Gavrilides*, the instant plaintiffs alleged that the virus caused damage within one mile of plaintiffs' restaurants. But, as the trial court observed, plaintiffs offered only a bare assertion on that matter. Regardless, plaintiffs did not allege that the executive orders prohibited access to their restaurants. Plaintiffs admitted that their restaurants were deemed essential businesses and remained open for carryout and delivery services. Thus, the trial court properly concluded that plaintiffs could not establish that an action of a civil authority prohibited access to their businesses. Moreover, as will be discussed next, even if plaintiffs could establish that the executive orders restricted access to their businesses, their claims would still be barred by the policy's virus exclusion.

## IV. VIRUS EXCLUSION

The policy's virus exclusion provides that defendant "will not pay for loss or damage caused by or resulting from virus, bacterium or other microorganism that induces illness or is capable of inducing physical distress, illness or disease." Plaintiffs argued below that the virus exclusion did not bar their claims because it did not apply to claims for business-income losses, and that the clause was ambiguous and should be construed against defendant. The trial court disagreed and ruled that the virus exclusion unambiguously barred plaintiffs' claims because the losses and damages plaintiffs alleged were directly or indirectly caused by a virus.

Plaintiffs argue that this ruling was erroneous because the virus exclusion applies only to injuries to the property itself and not the loss of business income. But, once again, this Court in *Gavrilides* considered and rejected the same arguments while interpreting a virtually identical clause. See *Gavrilides*, ___ Mich App at ___; slip op at 4, 10.

In *Gavrilides*, the plaintiffs argued that the virus exclusion did not "apply to the business income form because the virus exclusion uses the phrase 'loss or damage' without qualification and, therefore, [was] ambiguous." *Id*. at ___; slip op at 10. We rejected the plaintiffs' argument that the exclusion applied only to physical damage because the word "physical" did not prepend "loss or damage" in the exclusion, and thus the exclusion was "not restricted to physical losses or damages." *Id*. We further explained that the virus exclusion applied only narrowly to losses caused by a subset of microorganisms capable of causing physical distress, illness or disease. *Id*. We concluded that "[u]nder the circumstances of this case, if [the] plaintiffs suffered any material

-5-

loss, that loss could only have been caused by the virus, so the virus exclusion would necessarily apply." *Id*.

*Gavrilides* thus considered and rejected arguments that were identical with the instant plaintiffs' arguments. The policy's virus exclusion, which does not include the word "physical," unambiguously excludes coverage for any loss or damage "caused by or resulting from" a virus. Therefore, even if plaintiffs' claims were covered by the policy or there was an ambiguity relating to those provisions,[4] the claims would nonetheless be barred by the virus exclusion.

Affirmed.

/s/ Stephen L. Borrello
/s/ Douglas B. Shapiro
/s/ Noah P. Hood

---

[4] To be clear, we hold consistent with *Gavrilides* that the losses were not covered by the policy and that the coverage provisions are unambiguous.