*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LATASHA NELSON,

Plaintiff-Appellant,

v

KWADWO OWUSU, HIZMO TRUCKING, LLC,
and PROGRESSIVE MICHIGAN INSURANCE
COMPANY,

Defendants-Appellees.

UNPUBLISHED
December 22, 2020

No. 347963
Wayne Circuit Court
LC No. 17-012095-NI

Before: GADOLA, P.J., and RONAYNE KRAUSE and O'BRIEN, JJ.

PER CURIAM.

Plaintiff, Latasha Nelson, appeals as of right the order of the trial court granting defendants, Kwadwo Owusu and Hizmo Trucking, LLC, summary disposition under MCR 2.116(C)(8), and granting defendant, Progressive Michigan Insurance Company (Progressive), summary disposition under MCR 2.116(C)(10). We remand for further proceedings consistent with this opinion.

## I. FACTS

This case involves a policy of no-fault insurance issued by Progressive to Christopher Johnstone. Plaintiff and Johnstone previously had a dating relationship. At the time of the events of this case, plaintiff lived in Sterling Heights and Johnstone lived in Hillsdale. Plaintiff and Johnstone both assert that they never lived together at Johnstone's Hillsdale address, but that plaintiff occasionally spent a few days at Johnstone's home. On those occasions, plaintiff parked her car at his home.

In December 2016, Johnstone obtained a no-fault insurance policy from Progressive. In January 2017, plaintiff purchased a Kia Forte. Plaintiff testified that while at the Kia dealership, she was told that she would need proof of insurance to purchase the vehicle. She called Johnstone, who told her to call his insurance agent, Cory Richardson of Stop 1 Insurance Agency (Stop 1). When plaintiff called Richardson, he told her that the request to add her and the Kia to Johnstone's policy needed to be made by Johnstone, as the policy holder.

Plaintiff waited at the dealership while Johnstone called Richardson and requested that plaintiff and the Kia be added to his policy. Richardson then called plaintiff and asked for her identification, registration, and payment. Plaintiff sent a copy of her driver's license to Richardson, which showed her address in Sterling Heights. Plaintiff testified during her deposition that she told Richardson that she did not live with Johnstone, and that he assured her that it was not a problem to add her to Johnstone's policy, stating "that's okay, we do this all the time." Plaintiff denied that Richardson told her that Johnstone needed to own the vehicle, or that she needed to be living at Johnstone's home, for her to be added to his insurance policy.

Johnstone testified that when plaintiff purchased the Kia, she asked him to add her to his insurance policy because she could not afford her own policy. Johnstone testified that he called Richardson and explained the situation, and the agent told him that "they do that all the time." Johnstone maintained that he told Richardson that he and plaintiff lived at different addresses, and that the agent told him that it did not matter. Johnstone also testified that at the time plaintiff was added to his policy, he and plaintiff were no longer dating.

Richardson testified that Stop 1 arranges the issuance of insurance policies from various insurers, including Progressive. With regard to adding plaintiff to Johnstone's policy, Richardson recalled that the Kia dealership called him, and he spoke with plaintiff and told her that he would need to speak to Johnstone because he was the policy holder.

Richardson then spoke to Johnstone by telephone. Richardson testified that he told Johnstone that plaintiff could not be added as an additional driver on Johnstone's policy unless Johnstone had a financial interest in the new vehicle or plaintiff resided with Johnstone. He recalled that Johnstone told him that he did not have a financial interest in plaintiff's vehicle, but that plaintiff was his girlfriend and lived with him. Richardson explained that Johnstone seemed hesitant when providing this information, and he therefore asked Johnstone to electronically sign the household members acknowledgment statement, which stated that all of the information he had given regarding members of his household was accurate. Richardson testified that he did not ask plaintiff whether she lived with Johnstone, and instead relied on Johnstone's statement that plaintiff lived with him. Richardson testified that he was concerned when he received a copy of plaintiff's driver's license stating an address different from Johnstone's address. Richardson processed the application, and plaintiff was added to Johnstone's policy.

Approximately one month after purchasing the Kia, plaintiff was driving the vehicle when, while stopped at a traffic light in Detroit, her vehicle was struck by a truck driven by defendant Kwadwo Owusu and owned by defendant Hizmo Trucking. Plaintiff claimed injuries as a result of the collision. Initially, Progressive paid benefits to plaintiff under Johnstone's policy. However, in April 2018, Progressive informed Johnstone that his no-fault policy had been rescinded as of the date it was issued because Progressive had determined that Johnstone or an insured person under the policy, had "concealed, misrepresented or made incorrect statements or representations regarding a material fact or circumstance; or engaged in fraudulent conduct in connection with your application."

Plaintiff filed this action against Owusu, Hizmo Trucking, and Progressive, alleging negligence by Owusu and Hizmo Trucking, and alleging a claim for first-party personal protection insurance (PIP) benefits against Progressive. Progressive moved for summary disposition under

MCR 2.116(C)(10), arguing that Johnstone's no-fault policy was void *ab initio*, and therefore was properly rescinded, because Johnstone made material misrepresentations when adding plaintiff to his no-fault policy by claiming that plaintiff was a member of his household and that plaintiff's vehicle was garaged at his home. Progressive asserted that both plaintiff and Johnstone made false representations, innocent misrepresentations, and participated in silent fraud. Owusu and Hizmo Trucking moved for summary disposition under MCR 2.116(C)(8) on the basis that Progressive's rescission of the policy precluded plaintiff from recovering tort damages against Owusu and Hizmo Trucking under MCL 500.3135(2)(c). Following a hearing, the trial court granted defendants' motions for summary disposition. Plaintiff now appeals as of right.

## II. DISCUSSION

### A. SUMMARY DISPOSITION

Plaintiff contends that the trial court erred by granting defendants summary disposition. Plaintiff argues that Progressive was not entitled to rescind Johnstone's policy on the basis of material misrepresentation, and further, that she is an innocent third party entitled to benefits under the policy despite any alleged misrepresentations.

### 1. STANDARD OF REVIEW

We review de novo the trial court's decision to grant or deny summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). When reviewing a motion for summary disposition granted under MCR 2.116(C)(10), we consider all documentary evidence submitted by the parties in the light most favorable to the nonmoving party. *Johnson v VanderKooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). Summary disposition under MCR 2.116(C)(10) is warranted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Dawoud v State Farm Mut Auto Ins Co*, 317 Mich App 517, 520; 895 NW2d 188 (2016).

A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of the complaint, and may be granted only when the claims alleged are so clearly unenforceable that no possible development of the facts could justify recovery. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). When considering a motion under MCR 2.116(C)(8), a court considers only the pleadings, accepting as true all well-pleaded allegations and construing them in a light most favorable to the nonmoving party. *Nyman v Thomson Reuters Holdings, Inc*, 329 Mich App 539, 543; 942 NW2d 696 (2019).

We also review de novo issues involving the interpretation of statutes and of contracts, *Titan Ins Co v Hyten*, 491 Mich 547, 553; 817 NW2d 562 (2012). However, equitable relief, including rescission, is granted only in "the sound discretion of the trial court." *Bazzi v Sentinel Ins Co*, 502 Mich 390, 409; 919 NW2d 20 (2018). We therefore review the trial court's decision to grant Progressive the equitable relief of rescission for an abuse of the trial court's discretion. *Pioneer State Mut Ins Co v Wright*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 347072); slip op at 4.

## 2. MATERIAL MISREPRESENTATION

An insurance policy is a contract; the principles of construction that apply to contracts generally also apply to insurance policies. *Meemic Ins Co v Fortson*, ___ Mich ___, ___; ___ NW2d ___ (2020) (Docket No. 158302); slip op at 6. As with any other contract, "[a]ny clause in an insurance policy is valid as long as it is clear, unambiguous and not in contravention of public policy." *Id.*, quoting *Farm Bureau Mut Ins Co of Mich v Nikkel*, 460 Mich 558, 566; 596 NW2d 915 (1999). In this case, Johnstone's no-fault insurance policy issued by Progressive contained a fraud exclusion clause that provides, in pertinent part:

> This policy was issued in reliance upon the information provided on **your** insurance application. **We** may void this policy at any time, including after the occurrence of an accident or loss, if **you**:
>
> 1.    made incorrect statements or representations to **us** with regard to any material fact or circumstance;
>
> 2.    concealed or misrepresented any material fact or circumstance; or
>
> 3.    engaged in fraudulent conduct;
>
> at the time of application. This means that **we** will not be liable for any claims or damages that would otherwise be covered.
>
> When **we** have not voided or reformed the policy, **we** may still deny coverage for an accident or loss if **you**, in connection with the policy application, in connection with any requested change, or at any time during the policy period, have concealed or misrepresented any material factor circumstance or engaged in fraudulent conduct and that concealment, misrepresentation, or fraudulent conduct was material to a risk **we** assumed.
>
> **We** may deny coverage for an accident or loss if **you** or a person seeking coverage has concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.

"[U]nless a contract provision violates law or one of the traditional defenses to the enforceability of a contract applies, a court must construe and apply unambiguous contact provisions as written." *Rory v Continental Ins Co*, 473 Mich 457, 461; 703 NW2d 23 (2005). Pursuant to this unambiguous provision, Progressive is permitted to void the terms of the policy if Johnstone made incorrect statements or representations to Progressive with regard to any material fact or circumstance, concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct at the time of application.

Although an automobile insurance policy is a contract subject to common-law rules of contract interpretation, it is also governed by statutory provisions. The no-fault act governs the coverage mandated by the act, and the insurance policy governs optional coverages not mandated by the act. *Meemic Ins Co*, ___ Mich at ___; slip op at 6. An automobile insurance policy is subject to common-law contract defenses that may be invoked to avoid enforcement of the policy

unless those defenses are prohibited by statute. *Bazzi*, 502 Mich at 399-400. An insurer may raise the common law defense of fraud in the procurement of the policy as a defense to a claim for coverage mandated by the no-fault act, *Meemeic Ins Co*, ___ Mich at ___; slip op at 7, and the no-fault act does not preclude an insurer from rescinding a policy on the basis of fraud. *Bazzi*, 502 Mich at 401.

The common-law defense of fraudulent misrepresentation may support an equitable remedy, such as the rescission of a contract. *Titan*, 491 Mich at 557-558. "Rescission is justified without regard to the intentional nature of the misrepresentation, as long as it is relied upon by the insurer. Reliance may exist when the misrepresentation relates to the insurer's guidelines for determining eligibility for coverage." *21st Century Premier Ins Co v Zufelt*, 315 Mich App 437, 446; 889 NW2d 759 (2016) (quotation marks and citation omitted).

In this case, Progressive moved for summary disposition before the trial court, seeking rescission of the policy on the basis that Johnstone and plaintiff made material misrepresentations in the procurement of the policy. Progressive asserted that Johnstone misrepresented that plaintiff was a member of his household and that plaintiff's vehicle was garaged at his home, and that both plaintiff and Johnstone were participants in making false representations, innocent misrepresentations, and silent fraud.

To establish fraudulent misrepresentation, the plaintiff must demonstrate that (1) the defendant made a material representation, (2) the representation was false, (3) the defendant knew the representation was false when it was made, or made it recklessly, without knowing if it was true and as a positive assertion, (4) the defendant made the representation intending that the plaintiff act on the representation, (5) the plaintiff acted in reliance upon it, and (6) as a result, the plaintiff suffered damage. *Titan*, 491 Mich at 555. A representation is material if the insurer would not have issued the policy, in the manner or at the rate at which it was issued, if the insurer had known of the misrepresentation or nondisclosed fact. *Oade v Jackson Nat'l Life Ins Co of Mich*, 465 Mich 244, 253-254; 632 NW2d 126 (2001). An insurer's statement that it would not have issued the policy had it known of the undisclosed information is sufficient to establish that the misrepresentation was material. See *Lash v Allstate Ins Co*, 210 Mich App 98, 103-104; 532 NW2d 869 (1995).

Silent fraud, also known as fraudulent concealment, requires that (1) the defendant suppressed a material fact, (2) the defendant had the duty to disclose the fact, and (3) the defendant concealed the fact with the intent to defraud. *Titan Ins Co*, 491 Mich at 557. A person may be guilty of fraudulent concealment if he or she "remains silent when fair dealing requires him [or her] to speak." *US Fidelity & Guaranty Co v Black*, 412 Mich 99, 127; 313 NW2d 77 (1981).

In contrast to fraud and silent fraud, innocent misrepresentation does not require that the defendant knew or should have known that the representation was false. *Roberts v Saffell*, 280 Mich App 397, 405; 760 NW2d 715 (2008). Rather, under a theory of innocent misrepresentation false statements relied upon by the claimant are actionable regardless of whether the person making the statements acted in good faith. *Id*. A party's innocent misrepresentation may allow a party to a contract to seek a legal or equitable remedy. See *Titan Ins Co*, 491 Mich at 555.

Progressive asserted that plaintiff had been added to Johnstone's policy based upon the misrepresentations that plaintiff lived with Johnstone at his Hillsdale address and that the Kia was garaged at that address. Progressive asserted that Johnstone's failure to disclose that plaintiff lived elsewhere and garaged the car elsewhere were misrepresentations of material fact, and that had that information been disclosed, Progressive would not have permitted plaintiff or the Kia to be added to the policy. Progressive further asserted that plaintiff was not an innocent third party because she was involved in the process of acquiring coverage for herself under Johnstone's policy and was aware of the misrepresentations.

A review of the record indicates that there is no dispute that misrepresentations were made to Progressive regarding plaintiff's residence and the location where the Kia was garaged. Plaintiff was represented to be a member of Johnstone's household and it was represented that the Kia was garaged at Johnstone's address. Because both plaintiff and Johnstone testified that plaintiff did not live at Johnstone's address at the time he sought to add her to his policy and the Kia was not garaged at Johnstone's address, there is no dispute that the representations made to Progressive were false.

There is disagreement, however, regarding who provided the misinformation to Progressive. Johnstone testified that he told Richardson that plaintiff did not live with him, while Richardson testified that Johnstone told him that plaintiff did, in fact, live with him. Plaintiff testified that she did not tell Richardson that she lived with Johnstone, and provided him with a copy of her driver's license showing her Sterling Heights address; Richardson confirmed that plaintiff did not state that she was living with Johnstone, but also testified that he told her that she could only be added to the policy if she resided with Johnstone or if Johnstone had an ownership interest in the vehicle. Both plaintiff and Johnstone testified that Richardson assured them that it was not a problem that plaintiff was not living at Johnstone's Hillsdale address, suggesting that both plaintiff and Johnstone were aware that there was a question whether her separate address was a barrier to plaintiff being added to Johnstone's policy. In any event, the incorrect address was provided to Progressive, either by Johnstone or Richardson, and plaintiff took no steps to correct the incorrect information provided to Progressive.

The trial court found that plaintiff's deposition testimony established that she lived in Sterling Heights at the time Johnstone completed the application to add plaintiff to his policy. The trial court also found that Richardson, as an independent agent, acted as the agent of Johnstone and plaintiff in conveying to Progressive the misrepresentation that plaintiff lived at Johnstone's address for purposes of adding plaintiff to Johnstone's policy. The trial court concluded that because Richardson was acting as the agent of Johnstone and plaintiff, and because plaintiff did not advise Progressive of the misrepresentations in the policy even after receiving a copy of the policy with the incorrect address, Progressive was entitled to rescission.

When a policy of insurance is facilitated by an independent insurance agent, the independent insurance agent is considered to be the agent of the insured rather than the agent of the insurer. *Johnson v USA Underwriters*, 328 Mich App 223, 237; 936 NW2d 834 (2019). This Court has held that it is not a defense to misrepresentations appearing in an application for insurance for the insured to assert that the insurance agent completed the application and guided the insured through the process, nor is it a defense that the insured failed to read the application. See *Montgomery v Fidelity & Guaranty Life Ins Co*, 269 Mich App 126, 129-130; 713 NW2d 801

(2005). Here, either Johnstone, or Richardson acting as Johnstone's agent, provided incorrect information to Progressive with the result that Progressive acted upon that information and issued a policy to Johnstone that covered plaintiff and her vehicle. Because the unambiguous language of the policy permits Progressive to void the policy if Johnstone made incorrect statements or representations to Progressive with regard to any material fact or circumstance, concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct at the time of application, Progressive was entitled to void the policy.

### 3. MATERIALITY OF THE MISREPRESENTATIONS

Plaintiff contends, however, that the information regarding her legal domicile was not material, and therefore a misrepresentation regarding her domicile cannot be a basis for rescission. We disagree.

"[A] fact or representation in an application is 'material' where communication of it would have had the effect of 'substantially increasing the chances of loss insured against so as to bring about a rejection of the risk or the charging of an increased premium.' " *Oade*, 465 Mich at 253-254, quoting *Keys v Pace*, 358 Mich 74, 82; 99 NW2d 547 (1959). A representation thus is deemed material if the insurer would not have issued the policy in the manner or at the rate at which it was issued if the insurer had known of the misrepresentation or nondisclosed fact. See *id*. at 253-254. An insurer's statement that it would not have issued the policy had it known of the undisclosed information is sufficient to establish that the misrepresentation was material. See *Lash*, 210 Mich App at 103-104.

Plaintiff argues that even if she or Johnstone failed to provide her correct address, where she lived was immaterial because, according to the testimony of Janeen Copic, Progressive's litigation underwriting specialist, the real determining factor in Progressive's decision to issue a policy of insurance is the location where a vehicle is garaged. The record is clear, however, that plaintiff was not garaging her vehicle at Johnstone's address because she was not living there; she was instead garaging it at her Sterling Heights address where she lived. Moreover, Copic's affidavit is clear that had Progressive been aware that plaintiff was not living at Johnstone's address as represented, and also was garaging her vehicle at her address in Sterling Heights, it would not have added plaintiff's vehicle to Johnstone's no-fault policy because Progressive would not insure a vehicle housed at another address. We conclude that the trial court did not clearly err in concluding that the misrepresentation in the application was thus a material misrepresentation.

### 4. COPIC AFFIDAVIT

Plaintiff also contends that the trial court erred by relying upon Copic's affidavit to support the finding that Progressive was entitled to rescind Johnstone's policy because Copic did not have personal knowledge of plaintiff's claim under the policy. We disagree that the trial court erred by relying upon Copic's affidavit.

During her deposition, Copic testified that as a litigation underwriting specialist for Progressive, she handles the underwriting of insurance policies, and reviews policies when a case proceeds to litigation. In her affidavit in this case, Copic averred, in pertinent part:

1. I am an employee of The Progressive Group of Insurance Companies of which Progressive Michigan Insurance Company is a member ("Progressive") and I am familiar with the manner and process in which records are created and maintained by virtue of my duties and responsibilities.

2. I have personal knowledge of the matter stated in this Affidavit and if called to testify, I will attest to the facts stated as true.

\* \* \*

5. Latasha Nelson was added as an insured to Christopher Johnstone's policy of insurance with Progressive, policy number 912705948 on January 18, 2017.

6. Based upon our investigation, Latasha Nelson lives at [street address], Sterling Heights, Michigan 48312.

7. During our investigation, Latasha Nelson testified that she has lived at and garaged the 2017 Kia Forte at that address for four years.

8. Christopher Johnstone lives at [street address], Hillsdale, Michigan, the policy address.

9. Accordingly, Latasha Nelson did not reside with Christopher Johnstone at the policy address and her 2017 Kia Forte that was involved in this accident and insured under Christopher Johnstone's policy with Progressive was not garaged at the policy address, but at Latasha Nelson's actual residence.

10. Had Progressive known that Latasha Nelson did not reside with Christopher [Johnstone] and that the 2017 Kia Forte was regularly garaged at an address other than the policy address, it would not have written the policy as this would have been an unacceptable risk as Progressive does not write policies for vehicles kept in multiple households.

11. These material misrepresentations made by Christopher Johnstone and Latasha Nelson regarding the Progressive policy resulted in Progressive rescinding this policy of insurance on April 26, 2018, with a refund of all policy premiums, thereby affording no coverage on the date of the accident.

On appeal, plaintiff argues that Copic's averments in her affidavit cannot establish the materiality of Johnstone's alleged false representations of fact under MCR 2.119 because she lacked personal knowledge of Progressive's decision to rescind[1] Johnstone's policy. However,

---

[1] We note that an insurer cannot unilaterally rescind a no-fault policy; an insurer can void a policy and seek rescission, but rescission is an equitable remedy solely within the discretion of the court. See *Bazzi*, 502 Mich at 409.

materiality is not established by information regarding why the insurer voided the policy; rather materiality is sufficiently established by an insurer's statement that it would not have issued the policy if it had known of the misrepresentation or undisclosed information. See *Lash*, 210 Mich App at 103-104.

Copic's affidavit and deposition testimony were clear that if plaintiff or Johnstone had disclosed that plaintiff's vehicle was primarily garaged at her home in Sterling Heights, Progressive would not have added either plaintiff or her vehicle to the policy. In her capacity as a litigation underwriting specialist she was familiar with the risks that Progressive was willing to insure, and Copic therefore was able to offer her personal knowledge concerning whether Progressive would have insured plaintiff and her vehicle if it had been aware of the misrepresentations in the application. Therefore, we reject plaintiff's claim that Copic was not able to offer competent evidence regarding the materiality of the false representations made during the application process.

5. DUE PROCESS

Plaintiff also contends that she was deprived of due process because the trial court chose to reach the issue whether Richardson was an agent of Progressive or an independent agent without allowing her to brief and address the issue. Again, we disagree.

At the hearing on the motions for summary disposition, the trial court found that Richardson was an independent agent because he was not employed by Progressive. The trial court found that Richardson therefore was an agent of the insured, not the insurer. Plaintiff challenged this finding, and argued that Richardson's status as an independent agent was at issue in a separate declaratory judgment action that plaintiff had filed against the insurance agency, and that the question was more properly decided initially in that case. The trial court, however, explained that determination of Richardson's status as an agent was relevant to the resolution of this case. Although the trial court was unwilling to stay the proceedings in this case, the trial court invited plaintiff's counsel to file a motion for reconsideration to address the issue. Plaintiff did not file a motion for reconsideration. Plaintiff now contends that the trial court denied her right to due process because she was not permitted an opportunity to be heard on the issue.

Both the United States and Michigan Constitutions prohibit the government from depriving a person of life, liberty, or property without due process of law. US Const, Am XIV; Const 1963, art 1, § 17. The "deprivation of life, liberty, or property by adjudication must be preceded by notice and an opportunity to be heard." *Bonner v City of Brighton*, 495 Mich 209, 235; 848 NW2d 380 (2014). In this case, plaintiff supports her assertion that she was denied due process by citing *Al-Maliki v LaGrant*, 286 Mich App 483, 485-486; 781 NW2d 853 (2009), in which this Court concluded that the plaintiff's procedural due process rights were violated because the plaintiff was denied notice and an opportunity to be heard when the trial court decided a motion for summary disposition on the basis of an issue that had been conceded by the defendant, and thus was not addressed by the plaintiff. *Id*. at 488-489.

Here, Progressive sought summary disposition on the basis that plaintiff and Johnstone had concealed information and actively made fraudulent representations during the application process. Plaintiff argued that she did not make misrepresentations during the application process,

and suggested that any error in the application was the responsibility of Richardson. Plaintiff's argument thus by necessity invites an assessment of Richardson's status as an independent agent and whether his alleged misrepresentations can be imputed to Johnstone and plaintiff. Plaintiff was not precluded from addressing this aspect of the analysis, and could have done so in response to Progressive's motion for summary disposition. However, plaintiff did not focus on Richardson's status as an independent agent in her responsive briefing in the trial court, possibly in light of Richardson's unequivocal and unchallenged testimony that he sold no-fault policies for multiple insurance companies. Moreover, the trial court did not preclude plaintiff from arguing this issue, and invited plaintiff to brief the issue in the context of a motion for reconsideration. Accordingly, plaintiff's contention that she was deprived of notice and the opportunity to be heard is without merit.

## B. BALANCING THE EQUITIES

Although an insurer may raise the defense of fraud,[2] rescission is equitable in nature; it is not a matter of right, and the remedy is entrusted to the sound discretion of the trial court. In exercising its discretion and deciding whether an insurer is entitled to the remedy of rescission, the trial court must weigh "the equities," and rescission should not be granted when the result would be inequitable or unjust. *Bazzi*, 502 Mich at 410. Specifically, if two parties are equally innocent, the trial court must determine which of the blameless parties must bear the loss. *Id.* at 410-411.

In *Pioneer State Mut Ins Co*, ___ Mich App at ___; slip op at 5, this Court determined that the factors set forth in Justice MARKMAN's concurrence in *Farm Bureau Gen Ins Co of Mich v ACE American Ins Co*, 503 Mich 903, 906-907 (2018), for balancing the equities was a "workable framework" that provided appropriate guidance regarding this discretionary exercise. This Court stated:

> Reduced to their essence, five factors were identified and they address: (1) the extent to which the insurer could have uncovered the subject matter of the fraud before the innocent third party was injured; (2) the relationship between the fraudulent insured and the innocent third party to determine if the third party had some knowledge of the fraud; (3) the nature of the innocent third party's conduct, whether reckless or negligent, in the injury-causing event; (4) the availability of an alternate avenue for recovery if the insurance policy is not enforced; and (5) a determination of whether policy enforcement only serves to relieve the fraudulent insured of what would otherwise be the fraudulent insured's personal liability to

---

[2] Previously, Michigan courts adhered to the rule that insurers were prohibited from asserting the defense of fraud once an insurable event occurred and there was an innocent, injured third party, if the fraud perpetrated by the insured was easily ascertainable upon investigation. However, our Supreme Court in *Titan*, 491 Mich at 571, did away with the judicially-created "easily-ascertainable-fraud" and "innocent-third-party" rules. *Bazzi*, 502 Mich at 403.

the innocent third party. [*Pioneer State Mut Ins Co*, ___ Mich App at ___; slip op at 5.]

In this case, the trial court stated that it found unpersuasive plaintiff's argument that she is an innocent third party and that therefore the equites weigh against rescinding the policy as to her. The trial court, however, did not specify whether it found plaintiff was or was not an innocent third party, nor did the trial court apply the balancing test articulated in *Pioneer State Mut Ins Co*, which it must do before ordering the remedy of rescission once it determines that plaintiff is an innocent third party. On remand, if plaintiff is determined to be an innocent third party, the trial court must weigh the factors set forth in *Pioneer State Mut Ins Co* before deciding whether Progressive may rescind the no-fault policy with respect to plaintiff.

## C. DEFENDANTS OWUSU AND HIZMO TRUCKING

The trial court granted summary disposition in favor of defendants Owusu and Hizmo Trucking because it determined that Progressive was entitled to rescind the no-fault policy with respect to plaintiff, which effectively meant that plaintiff was uninsured at the time of the accident. See *Esurance Prop & Cas Ins Co v Mich Assigned Claims Plan*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 344715); slip op at 4-5 (when a policy of no-fault insurance is rescinded, the policy is considered to have not existed). Accordingly, the trial court determined that plaintiff was not entitled to recover damages from Owusu and Hizmo Trucking under MCL 500.3135(2)(c) ("Damages must not be assessed in favor of a party who was operating his or her own vehicle at the time the injury occurred and did not have in effect for that motor vehicle the security required by [MCL 500.3101] at the time the injury occurred.). On remand, the trial court shall determine what, if any, effect its determination on remand has on its decision to grant summary disposition in favor of Owusu and Hizmo Trucking.

Remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Colleen A. O'Brien

-11-