*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SCAN CLEAR LLC,

        Plaintiff-Appellant,

v

HOME-OWNERS INSURANCE COMPANY,

        Defendant-Appellee.

UNPUBLISHED
March 14, 2024

No. 363638
Oakland Circuit Court
LC No. 2022-191933-AV

Before: GARRETT, P.J., and RIORDAN and LETICA, JJ.

PER CURIAM.

In this no-fault action, plaintiff appeals by leave[1] granted the circuit court order reversing the district court order denying defendant's motion for reconsideration of the district court's denial of defendant's request for attorney fees. We reverse and remand for reinstatement of the district court order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On April 14, 2019, Adam Raikany (Raikany) was injured in a motor vehicle accident. Raikany was insured under a no-fault automobile policy with defendant. Plaintiff is a facility where magnetic resonance imaging (MRI) is performed. After the accident, Raikany's doctor prescribed three MRIs that were performed by plaintiff. Plaintiff billed defendant $3,750 for each scan,[2] totaling $11,250. Defendant only paid plaintiff $750 for each scan, totaling $2,250.

---

[1] *Scan Clear LLC v Home-Owners Ins Co*, unpublished order of the Court of Appeals, entered April 12, 2023 (Docket No. 363638).

[2] Joseph Ruefiel testified that he was not a medical doctor, but a physical therapist. He referred to the MRIs as a "scan."

On August 14, 2019,[3] plaintiff filed a complaint in district court for recovery of no-fault benefits. The case proceeded to a jury trial. Plaintiff called one witness, Joseph Ruefiel (Ruefiel), the owner of the MRI facility. Ruefiel testified plaintiff's billing rate was premised on three market studies. The first took place before opening the MRI facility in 2017. In the first study, Ruefiel hired attorneys, who provided Ruefiel with explanations of benefits from different MRI service providers. In light of the first study, Ruefiel charged $3,750 per scan.

The second study occurred in September or October of 2017. In the second study, Ruefiel determined the rate of $3,750 was correct because insurance companies paid him about 90% to 100% of the amount billed. When conducting this study, Ruefiel determined that defendant paid over 90% of plaintiff's billing rate in the past. The third study occurred in 2019. Ruefiel contacted a research company in Texas, owned by an individual who is a doctor and lawyer, which determined other facilities in plaintiff's same geographic area charged about 90% or 85% of what plaintiff charged.

Ruefiel testified that when he opened his business in 2017,[4] he hired an agent to fill out and submit a Certificate of Need (CON) to the State of Michigan. The CON stated plaintiff expected to charge $1,200 per scan. But, plaintiff never charged $1,200 per scan. Since plaintiff opened in 2017, it charged $3,750 per scan. According to Ruefiel, the agent made an error when filling out the CON. Ruefiel identified prior billings to insurance companies and the amounts paid. He testified that Hanover Insurance Company paid plaintiff 100% of the billed amount, Progressive Insurance Company paid 97% of the billed amount, and defendant paid 91% of the billed amount. Despite the failure by these insurance companies to pay the billed amount, plaintiff did not sue for any outstanding remainder. Ruefiel was satisfied if he received 90% of the billed amount.

Some insurance companies began to object to plaintiff's charge of $3,750, citing the $1,200 rate identified in the CON. Ruefiel testified that, in March 2019, plaintiff sent a letter to the Michigan Department of Health and Human Services (DHHS),[5] informing it that the CON was updated and plaintiff charged $3,750 for each scan since the facility's inception and the intent to continue to charge that rate in the near future. Ruefiel also testified that he did not receive a response to the updated CON, and the state did not "care about the amount charged." After plaintiff solely presented Ruefiel's testimony, defendant moved for a directed verdict, arguing plaintiff failed to prove the medical treatment provided by plaintiff was causally related to an automobile accident. Plaintiff alleged that the submission of the explanation of benefits and defendant's voluntary payment established the necessary causation. The district court rejected plaintiff's position, citing MRE 409, and granted the directed verdict.

---

[3] Although there is a disparity in the citation to the date of filing in the district court, that court's register of actions reflects that it was filed on August 14, 2019.

[4] Plaintiff only treated no-fault patients that suffered injuries in auto accidents.

[5] Plaintiff produced a letter dated March 21, 2019, addressed to DHHS reflecting the charge of $3,750.

Defendant moved for attorney fees in the district court, under MCL 500.3148(2). During a hearing, the district court incorrectly stated the MRI facility opened in 2019, not 2017. In light of this mistake, the district court concluded only a few months could have passed between the time defendant filed its initial CON and corrected the CON. The district court denied defendant's motion.

Defendant moved for reconsideration, arguing the district court committed palpable error by basing its holding on an incorrect date. The district court acknowledged the MRI facility opened in 2017, but continued to deny defendant's motion for attorney fees. It held that, regardless of the year plaintiff sent the initial CON, defendant failed to meet the standard for attorney fees under MCL 500.3148(2). Specifically, the district court held defendant failed to demonstrate plaintiff's claim was in some respect fraudulent or so excessive it had no reasonable foundation. The district court further found defendant failed to present binding authority, showing its entitlement to attorney fees.

Defendant appealed to the circuit court. The circuit court reversed the district court's order denying reconsideration, holding the district court abused its discretion by failing to award postjudgment attorney fees to defendant, because defendant did prove plaintiff's charge was in some respect fraudulent and excessive.[6] The circuit court also held the district court abused its discretion by denying defendant reconsideration. We granted leave to appeal to determine whether the circuit court wrongfully reversed the district court's decision denying defendant reconsideration.

## II. STANDARD OF REVIEW

"The decision to award or deny attorney fees under MCL 500.3148(2) is reviewed for an abuse of discretion." *Gentris v State Farm Mut Auto Ins Co*, 297 Mich App 354, 361; 824 NW2d 609 (2012). "A trial court abuses its discretion if it chooses an outcome outside the range of principled outcomes." *Farm Bureau Ins Co v TNT Equip, Inc*, 328 Mich App 667, 672; 939 NW2d 738 (2019).

"A trial court's findings regarding the fraudulent, excessive, or unreasonable nature of a claim should not be reversed on appeal unless they are clearly erroneous." *Beach v State Farm Mut Auto Ins Co*, 216 Mich App 612, 627; 550 NW2d 580 (1996). "A finding is clearly erroneous if there is no evidentiary support for it or if this Court is left with a definite and firm conviction that a mistake has been made." *Chelsea Inv Group LLC v Chelsea*, 288 Mich App 239, 251; 792 NW2d 781 (2010). "Any issues regarding what legally constitutes fraud in some respect, excessiveness, and an unreasonable foundation are questions of law subject to de novo review." *Gentris*, 297 Mich App at 361 (quotation marks and citation omitted).

This Court reviews a trial court's decision addressing a motion for reconsideration for an abuse of discretion. *Frankenmuth Ins Co v Poll*, 311 Mich App 442, 233; 875 NW2d 250 (2015).

---

[6] The circuit court did not cite to record evidence, but merely concluded: "The proofs presented at trial established Plaintiff's act of overbilling and that the charges submitted to Home-Owners were in some respect fraudulent and excessive."

Issues of statutory construction present questions of law that are reviewed de novo. *Le Gassick v Univ of Mich Regents*, 330 Mich App 487, 495; 948 NW2d 452 (2019).

## III. ANALYSIS

Plaintiff contends that the circuit court erred in concluding that defendant was entitled to an award of attorney fees pursuant to MCL 500.3148(2). We agree.

MCL 500.3148(2) states:

> A court may award an insurer a reasonable amount against a claimant as an attorney fee for the insurer's attorney in defending against a claim that was in some respect fraudulent or so excessive as to have no reasonable foundation. A court may award an insurer a reasonable amount against a claimant's attorney as an attorney fee for defending against a claim for which the client was solicited by the attorney in violation of the laws of this state or the Michigan rules of professional conduct. [MCL 500.3148(2).]

"The language of MCL 500.3148(2) indicates that a court may exercise its discretion by awarding attorney fees to an insurer, but only if a claim was in some respect fraudulent or so excessive as to have no reasonable foundation." *Gentris*, 297 Mich App at 361. MCL 500.3148(2) "does not mandate that the court award attorney fees on a finding of fraud or excessiveness[.]" *Id*. at 361-362. "Further, an award of attorney fees under the statute can be entered by a court on the basis of either fraud standing alone or excessiveness with no reasonable foundation or, of course, on the basis of both factors." *Id*. at 362.

"A party bringing a motion for reconsideration must establish that (1) the trial court made a palpable error and (2) a different disposition would result from correction of the error." *Estate of Luckow v Luckow*, 291 Mich App 417, 426; 805 NW2d 453 (2011); see also MCR 2.119(F)(3). Palpable error is "[e]asily perceptible, plain, obvious, readily visible, noticeable, patent, distinct, manifest." *Luckow*, 291 Mich App at 426 (quotation marks and citation omitted).

The second prong of the *Luckow* test is not met.[7] Defendant was required to establish "a different disposition would result from correction of the error." *Luckow*, 291 Mich App at 426. As explained by the district court, regardless of whether the CON was filed in 2017, or 2019, defendant had not shown attorney fees were warranted under MCL 500.3148(2). Specifically, the district court held defendant was not entitled to attorney fees because defendant failed to (1) demonstrate plaintiff's claim was, in some respect fraudulent; (2) demonstrate plaintiff's fee

---

[7] On reconsideration, the district court acknowledged that it initially ruled premised on the mistaken representation that Ruefiel purchased plaintiff in 2019. Nonetheless, the district court recognized that when the correct year of purchase, 2017, was applied, it did not alter the fact that defendant failed to show charges that were in some respect fraudulent and excessive. Thus, the district court corrected the error, but found that it did not alter the propriety of denying the attorney fees motion.

was so excessive it had no reasonable foundation; and (3) provide binding precedent supporting defendant's entitlement to attorney fees.[8]

## A. FRAUDULENT CLAIM

A trial court may award attorney fees to the attorney of an insurer, for defending a claim, which is "in some respect fraudulent." MCL 500.3148(2). MCL 500.3148(2) does not specifically define fraud. Under Michigan contract law,

> [t]he general rule is that to constitute actionable fraud it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. [*Titan Ins Co v Hyten*, 491 Mich 547, 555; 817 NW2d 562 (2012) (citations omitted).]

Defendant contends plaintiff's claim was fraudulent because, when plaintiff submitted a CON to the State of Michigan in 2017, plaintiff indicated it intended to charge $1,200 per scan. But, plaintiff never charged $1,200 per scan, instead charging $3,750, over three times the amount reported to the state.

The discrepancy between plaintiff's CON and billing rates is irrelevant to whether plaintiff's claim against defendant was fraudulent. According to Ruefiel, the initial CON was incorrect because an agent hired by plaintiff made an error when originally filling out the documentation. Ruefiel, as plaintiff's president, sent a letter, dated March 21, 2019, informing the State of Michigan that the initial CON was incorrect and providing updated billing information addressing the charge of $3,750 for a scan. Raikany was injured on April 14, 2019, nearly a month after plaintiff sent its letter to the state. By the time Raikany received MRIs from plaintiff, the state was purportedly informed of the correct billing information. This case was filed on August 14, 2019, nearly four and a half months after the state was sent the correct information.

---

[8] The district court did not decline to award attorney fees in an exercise of its discretion, regardless of whether the fees were fraudulent or excessive because the district court provided specific reasons why attorney fees were not warranted.

Defendant did not present evidence showing that plaintiff made any materially false misrepresentation to defendant,[9] that defendant relied on the misrepresentation,[10] and that it suffered damages as a result. *Id.* Whether plaintiff made a misrepresentation to the State of Michigan, which was corrected before the date Raikany received treatment, is irrelevant to the question of whether fraud was committed by plaintiff. Defendant failed to prove plaintiff's claim against defendant was fraudulent, in any respect. The district court correctly held that defendant failed to show attorney fees were warranted under MCL 500.3148(2) on the basis of fraud.

## B. EXCESSIVE CLAIM

A trial court may award attorney fees to the attorney of an insurer, for defending a claim, which is "so excessive as to have no reasonable foundation." MCL 500.3148(2). Defendant asserts plaintiff's rates far exceed those charged by other area hospitals, such as Beaumont, Henry Ford, or Detroit Medical Center.

Although defendant asserts plaintiff's rates exceed other comparable medical providers, defendant did not present evidence of what other medical providers charge for MRIs. During trial, defendant stated it was planning to call a witness, who would testify Beaumont Hospital charges $960 per MRI. However, the district court granted a directed verdict before defendant called any witnesses. Plaintiff presented evidence showing insurance providers in the past paid between 90% and 100% of the $3,750 rate for MRIs, including defendant. Defendant failed to present evidence to show the $3,750 rate was so excessive it had no reasonable foundation.[11]

The circuit court's decision is reversed, and the case remanded to the district court for reinstatement of the order denying defendant's reconsideration motion. We do not retain jurisdiction.

/s/ Kristina Robinson Garrett
/s/ Michael J. Riordan
/s/ Anica Letica

---

[9] Defendant failed to present any evidence regarding the CON process, whether the rate specified in the CON was binding, and the manner, ability, and entity able to challenge an increase to the rate identified in the CON. See e.g., *Mich Affiliated Healthcare Sys v Dep't of Public Health*, 209 Mich App 699, 702; 531 NW2d 722 (1994) (concluding that a competitor medical entity did not have standing to contest an agency's decision pertaining to a CON). And, defendant did not present evidence to contradict Ruefiel's testimony that DHHS was not concerned with the rate charged.

[10] Indeed, defendant did not contest plaintiff's representation in the district court that defendant previously paid for scans at 90% of the billed rate.

[11] Defendant also faulted plaintiff for determining its rates by consulting with lawyers instead of other medical facilities. Yet, defendant failed to present any evidence regarding the propriety of the rate charged to contest plaintiff's proofs regarding the insurers that did pay at or near the billed amount of $3,750 for each scan. Furthermore, Ruefiel testified that one of his consultants was both a doctor and a lawyer.