*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

IMANI PAGE,

Plaintiff-Appellee,

v

PROGRESSIVE MARATHON INSURANCE
COMPANY,

Defendant-Appellant.

UNPUBLISHED
September 22, 2025
9:17 AM

No. 370765
Wayne Circuit Court
LC No. 23-000415-NI

Before: WALLACE, P.J., and RIORDAN and REDFORD, JJ.

PER CURIAM.

Plaintiff brought this breach of contract action arising out of defendant's failure to pay personal protection insurance (PIP) benefits, as well as uninsured motorist (UM) benefits, allegedly in violation of an insurance contract between the parties. Defendant eventually moved for summary disposition under MCR 2.116(C)(10), alleging that plaintiff made a material misrepresentation in her initial application and, as a result, it legally rescinded the insurance contract. The trial court denied the motion for summary disposition, as well as defendant's timely motion for reconsideration. We reverse.

## I. FACTS

Prior to the events leading to this case, plaintiff maintained Florida motor vehicle insurance that was issued to her in Florida by an underwriter affiliated with Progressive in Florida. She subsequently moved to Michigan and, on July 31, 2021, plaintiff contacted insurance agent Robert Castor at MetLife A & H Insurance Agency, which sells insurance policies issued by defendant in Michigan. While plaintiff argues that she called the agency simply to change her address on her existing Florida insurance policy, the record demonstrates that she completed an application for Michigan no-fault insurance to be issued by defendant, that she did so with the assistance of Castor

-1-

(who she contacted via cell phone), and that she signed the application via an electronic signature.[1] The vehicle listed in plaintiff's application for insurance was a 2008 sport utility vehicle (SUV).

The following paragraph was included in the application:

I declare that none of the vehicles listed in the application will be used to carry persons or property for compensation or a fee, or for retail or wholesale delivery, including, but not limited to, the pickup, transport, or delivery of magazines, newspapers, mail, or food, except for rideshare use of any such vehicle for which Progressive Rideshare Insurance has been purchased.[2]

The parties do not dispute the fact that plaintiff used the SUV to deliver food for an online delivery service and that she was compensated for delivering that food. Records demonstrate that plaintiff had delivered food as recently as several hours before the accident.

At approximately 11:45 p.m., on August 6, 2021, plaintiff's SUV was struck by another vehicle that swerved into her lane. The driver of the other vehicle fled the scene after the crash. The parties agree that plaintiff was not performing any task for the delivery service at the time of the accident (she had logged off the food delivery service's application hours before the accident).

Plaintiff subsequently filed claims for PIP benefits and UM benefits. Plaintiff's claim for PIP benefits included a claim for lost wages due to her inability to continue delivering food for the online delivery service. In discussions with defendant's claims representatives, plaintiff readily admitted that she used the SUV to conduct food deliveries for the online service, and records obtained by defendant from that service confirm that she was delivering food for the service even before she submitted her application for insurance on July 31, 2021.

Due to plaintiff being compensated for food delivery while operating the SUV, despite her declaration that she would refrain from doing so, defendant sent a letter to plaintiff notifying her that it rescinded the policy due to her alleged material misrepresentation of fact.

## II. PROCEDURAL HISTORY

Following the filing of plaintiff's complaint, defendant subsequently moved for summary disposition under MCR 2.116(C)(10). First, defendant argued that plaintiff's insurance application stated that the primary use of her SUV would be for "Pleasure/Personal," that defendant provided a policy of insurance in reliance on that representation, and that the statement constituted a material misrepresentation. It argued this was a material misrepresentation because plaintiff's use of the vehicle included transporting food for the online delivery service, and this prohibited use began

_____

[1] The record is unclear as to whether plaintiff simply had a telephone conversation with Castor, authorizing him to attach her electronic signature, or if she electronically signed the application using a smart phone or some other device; however, regardless of the manner in which the application was signed, the parties do not dispute that plaintiff signed it.

[2] The outline of coverage contained in the application does not include any suggestion that plaintiff was applying to purchase Progressive Rideshare Insurance.

*before* she even procured the policy of insurance from defendant (which plaintiff admitted in her deposition and which was corroborated by records from the online delivery service). Second, defendant argued that plaintiff's declaration that she would not use the SUV to carry property for compensation, including the delivery of food, was an additional material misrepresentation upon which defendant relied, and which was supported by the same evidence.

Defendant also noted that the policy contained a clause indicating that defendant may void the policy at any time if plaintiff made incorrect statements or representations to defendant with regard to any material fact or circumstance, or if she concealed or misrepresented any material fact or circumstance, at the time of the application. Defendant also attached an affidavit signed by an underwriting specialist employee averring that, "[h]ad [plaintiff] disclosed the vehicle insured under [the policy] would be used to transport food for compensation on [the online delivery service], the premium Progressive would have charged for the insurance policy would have been 33.0% higher than the premiums actually charged . . . ."

Defendant argued that it suffered injury as a result of its reliance upon plaintiff's material misrepresentation, and argued that it established all of the elements for proving fraud or fraudulent misrepresentation in this case pursuant to *Titan Ins Co v Hyten*, 491 Mich 547, 555; 817 NW2d 562 (2012). As such, defendant argued that it was entitled to rescind the policy back to the date of inception, thereby voiding the policy and any coverage *ab initio* (which it had done presuit by promptly notifying plaintiff of the rescission and refunding all policy premiums to her). Thus, defendant argued that it was entitled to summary disposition because there was no genuine issue of material fact that there "is no Progressive policy under which [p]laintiff may claim due to the proper rescission of same."

Plaintiff responded by first arguing that the inception date of the policy was October 21, 2018, not July 31, 2021, based on documentation in the claims file and that, rather than calling to purchase a new insurance policy on July 31, 2021, she merely contacted the insurance agent to change her address.

Second, plaintiff correctly noted that the application did not state that her use of the vehicle would be "for pleasure/personal purpose only," as defendant implied in its motion; but rather, the policy simply stated that the *primary* use of the vehicle was "Pleasure/Personal." Plaintiff argued that the record from the online delivery service verified that she only used the SUV for food delivery roughly 20 hours per week for only one month out of the 34 months she was insured by the Michigan Progressive policy, which was "an exceedingly small percentage of the time."

Third, plaintiff argued that she had not made any misrepresentations to defendant. More specifically, she indicated that the agent who assisted her on July 31, 2021 never inquired as to plaintiff's employment or otherwise asked plaintiff if she used the vehicle for employment as a ride-share driver. Plaintiff further argued that the alleged misrepresentation about the food delivery service could not have been material, such that it would increase the chances of loss insured against so as to bring about a rejection of the risk or the charging of an increased premium (as argued by defendant), because a reasonable underwriter would have *asked* for such information if they deemed it to be material, which defendant's representative did not do.

We pause here to note that plaintiff attached nothing to her response to support her argument about the contents of this phone communication with the agent, with the sole exception of log notes produced by defendant. Those notes, alongside of the deposition testimony of defendant's claims representative, indicate: (1) the claims representative attempted to obtain a copy of the recording from Castor, but when she called Castor's agency, she was told he could only be reached by email; and (2) that he never responded to her email. At the hearing on defendant's motion, counsel for plaintiff conceded that he never filed a motion requesting the trial court to compel the recordings. There is likewise nothing in the record before us indicating that plaintiff's counsel subpoenaed the agency to obtain the recording or anything else regarding the call. The record regarding the contents of the conversation between Castor and plaintiff is bare. Plaintiff was never asked about the call in her deposition and, despite that fact, plaintiff never submitted an affidavit indicating what was allegedly said during that call or the manner in which Castor "assisted" her with signing the application.[3]

Fourth, plaintiff argued that the definition of the term "Ride-sharing activity" in the policy only pertains to the time that the user is logged on to the online enabled application and that plaintiff was not logged onto that application at the time of the accident. Thus, plaintiff argued this definition creates an ambiguity when considered alongside the application's declaration that the applicant would not use the vehicle to delivery food, i.e., reading those two terms in concert, plaintiff argued that defendant could only exclude coverage while the insured was logged onto the online enabled application.[4] But, as noted above, plaintiff did not purchase ride-share coverage, a fact omitted from plaintiff's response.

Addressing the first five elements for establishing fraud or fraudulent misrepresentation set forth in *Hyten*, 491 Mich at 555, plaintiff argued that defendant: (1) failed to provide evidence that plaintiff made any representation; (2) failed to demonstrate that plaintiff made a false representation because the it could not prove that the primary purpose of plaintiff's use of the SUV was not "Pleasure/Personal"; (3) failed to prove that plaintiff knew she made a false statement because it failed to produce the recording of her conversation with Castor and that, at most, it could be said that she assented to defendant's contractual terms, which were ambiguous as a result of the above referenced ride-share definition; (4) failed to prove that plaintiff made a statement with the intent that it be relied upon by defendant; and (5) could not claim to rely upon information it never requested. As to the final, sixth element, plaintiff argued that any damage incurred by defendant was caused entirely by the agent who sold plaintiff the policy issued by defendant. *Hyten*, 491 Mich at 555.

---

[3] Again, to be clear, plaintiff admitted that she signed the application, which contains plaintiff's name typed onto the signature line. In paragraph 15 of its motion, defendant alleges that "[p]laintiff signed the Policy Application on July 31, 2021," to which plaintiff responded: "Admit. Plaintiff called [d]efendant's agent on July 31, 2021, to inform [d]efendant of her change of address from Florida to Michigan. During said phone call, [p]laintiff completed and signed the application with the assistance of [d]efendant's agent. . . ."

[4] Based on the record, it appears that, during the time plaintiff was logged onto the delivery service's application, she was covered by insurance through the delivery service.

Plaintiff's response also relied upon this Court's decision in *Lake States Ins Co v Wilson*, 231 Mich App 327; 586 NW2d 113 (1998), for the proposition that any alleged fraud in this case was "easily ascertainable" by defendant and, as a result, it was not entitled to rescission.

In its reply, defendant first noted that plaintiff's assertion about the policy beginning in 2018, as opposed to July 31, 2021, was without merit because her prior policy with Progressive was a Florida policy that was regulated by Florida law, whereas the policy at issue in this case is a Michigan policy regulated by Michigan law. Defendant likened the issuance of the Michigan policy to a policy renewal, which defendant correctly noted is presumed to be "a new, and a separate and distinct contract, unless the intention of the parties is shown clearly that the original and renewal agreements shall constitute one continuous contract." *21st Century Premier Ins Co v Zufelt*, 315 Mich App 437, 443-444; 889 NW2d 759 (2016). Defendant further relied on *Zufelt*'s binding precedent that a new contract is only continuous when it is based on the same terms as conditions as the original policy. *Id*. at 444. Defendant then argued that there is no dispute that the Michigan policy does not contain the same terms as the prior Florida policy, i.e., the Michigan policy cannot be a continuation of the Florida policy. With regard to plaintiff's argument about the "easily ascertainable" standard for proving fraud pursuant to *Lakes States Ins Co*, defendant noted that the "easily ascertainable" standard was overruled by the Michigan Supreme Court in *Hyten*, 291 Mich at 570. While defendant essentially conceded in its reply that it could not prove that plaintiff's primary use for the SUV was something other than "Pleasure/Personal," it was nonetheless entitled to summary disposition because plaintiff falsely declared in her application that the SUV would not be used to carry property for compensation, including the delivery of food. Finally, defendant simply ignored plaintiff's argument about the alleged ambiguity created by the definition of "ride-sharing activity."

The trial court conducted a hearing regarding defendant's motion in February 2024. Plaintiff claimed it was necessary for defendant to produce a copy of the recording between plaintiff and Castor in order to prove plaintiff made a material misrepresentation. The court inquired after the recording from defense counsel, but defense counsel said her client was not in possession of any recording with the agent and that she was not aware that plaintiff's counsel ever subpoenaed the agent or filed a notice to take his deposition. It appears from the hearing transcript that the trial court accepted plaintiff's argument and believed defendant to be in possession of the recording, because defendant's own claims file referenced it and defendant requested a copy of the recording from the agency. Based thereon, the trial court denied defendant's motion for summary disposition and indicated that the issue of whether plaintiff made a material misrepresentation in her application for insurance was a question of fact for the jury.

Defendant filed a motion for reconsideration, as well as a supplement to the motion for reconsideration in which it advised the trial court about this Court's issuance of *Mota-Peguero v Falls Lake Nat'l Ins Co*, ___ Mich App ___; ___ NW2d ___ (2024) (Docket No. 364103). Defendant argued that the facts of *Mota-Peguero* directly support its argument that plaintiff's misrepresentation in her application regarding food delivery entitled defendant to rescind the policy. The court denied defendant's motion for reconsideration. This appeal followed.

## III.  ANALYSIS

### A.  STANDARD OF REVIEW

"This Court reviews the grant or denial of summary disposition de novo to determine if the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).  A party is entitled to summary disposition under MCR 2.116(C)(10) when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law."  MCR 2.116(C)(10). "Affidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted in the motion are required (a) when the grounds asserted do not appear on the face of the pleadings, or (b) when judgment is sought based on subrule (C)(10)." MCR 2.116(G)(3).

> A motion under subrule (C)(10) must specifically identify the issues as to which the moving party believes there is no genuine issue as to any material fact. When a motion under subrule (C)(10) is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, judgment, if appropriate, shall be entered against him or her. [MCR 2.116(G)(4).]

"A motion under MCR 2.116(C)(10) . . . tests the *factual sufficiency* of a claim." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019).  When considering a motion under MCR 2.116(C)(10), "a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion."  *Id*.  Such a motion may only be granted if there is no genuine issue of material fact.  *Id*.  "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ."  *Id*. (quotation marks and citation omitted).

"The proper interpretation of a contract is a question of law that this Court reviews de novo."  *Hyten*, 491 Mich at 553.

### B.  RESCISSION OF THE INSURANCE POLICY

Defendant argues on appeal that it was entitled to rescind the policy of insurance because plaintiff's declaration that she would not receive compensation to use the SUV to deliver food was a material misrepresentation upon which defendant relied—specifically, defendant issued an insurance policy to plaintiff for which it charged 33% less than it would have if plaintiff had not made the false declaration.  "[F]raud in the application for an insurance policy may allow the blameless contracting party to avoid its contractual obligations through the application of traditional legal and equitable remedies."  *Id*. at 570.  Among the equitable remedies available is rescission.  *Mota-Peguero*, ___ Mich App at ___; slip op at 3.  "But the remedy of rescission requires proof of a fraudulent misrepresentation that was material."  *Id*. at 4.

> The generally accepted test for determining the materiality of a fact or matter as to which a representation is made to the insurer by an applicant for insurance is to be found in the answer to the question whether reasonably careful and intelligent

underwriters would have regarded the fact or matter, communicated at the time of effecting the insurance, as substantially increasing the chances of loss insured against so as to bring about a rejection of the risk or the charging of an increased premium. [*Id*. at 3 (quotations marks and citation omitted).]

In *Mota-Peguero*, the plaintiff completed an application for insurance in which she responded "no" to the following question: "[a]re any vehicles used to carry persons or property for compensation or a fee (transportation networks, ridesharing, Uber, Lyft, taxis, etc.)?" *Id*. at 2. In her deposition, the plaintiff admitted that she used her vehicle for both of the ridesharing companies referenced in the question. The trial court granted summary disposition against both the plaintiff and an intervening plaintiff (a healthcare provider), on the basis that the plaintiff committed fraud in her application. Among the issues raised by the intervening plaintiff, on appeal, was whether that misrepresentation by the plaintiff was material.[5] This Court found that rescission was proper because the plaintiff's declaration constituted a material misrepresentation of fact, adopting the reasoning of *Fatty v Farm Bureau Ins Co of Mich*, unpublished per curiam opinion of the Court of Appeals, issued November 21, 2023 (Docket No. 363888).

With regard to elements two through five of common-law fraud, under *Hyten*, we likewise find the reasoning in *Fatty* to be persuasive, as applied to the similar facts of the present case.[6] In *Fatty*, the plaintiff answered a question in an application for insurance by stating that he would not be driving the vehicle to carry persons for a fee, despite the fact that he used it to earn money driving people via a rideshare application. Because the plaintiff had already been driving for the ride-share company for two months at the time of his application, this Court found that his answer to the application's question established "elements two, three, and four of common-law fraud: a false statement, knowing falsity, and intentionality." *Fatty*, unpub op at 6, citing *Hyten*, 491 Mich at 555. This Court also found that, as to element five, the defendant acted in reliance on the plaintiff's answer to the question, as evidenced by the fact that it accepted the application and provided insurance coverage. *Id*. Further, this Court in *Fatty* found that the defendant suffered an injury by paying benefits to the plaintiff in connection with the car accident. *Id*. Regarding the issue of materiality, the defendant produced an unrefuted affidavit signed by a representative for the defendant indicating that the defendant would not have granted the application for insurance if it had known the plaintiff was using the vehicle to transport passengers for a fee, due to the significantly higher risk it would face as the insurer. *Id*. That affidavit established the materiality of the plaintiff's misrepresentation, i.e., because answering the question truthfully would have resulted in the application being denied, the plaintiff's false denial of the question was a material representation. *Id*. Thus, this Court found, "[b]ecause defendant successfully established fraud in

---

[5] The other issue pertained to how rescission of the policy would affect the intervening plaintiff's health provider's claim.

[6] "Although MCR 7.215(C)(1) provides that unpublished opinions are not binding under the rule of stare decisis, a court may nonetheless consider such opinions for their instructive or persuasive value." *Kennard v Liberty Mut Ins Co*, 341 Mich App 47, 53 n 2; 988 NW2d 797 (2022) (quotation marks and citation omitted).

the procurement, and requested rescission, defendant was entitled to rescind the policy and declare it void *ab initio*." *Id*. (quotation marks and citations omitted).

Because plaintiff was already driving for the food delivery service at the time of her application, her answer to the question about food delivery established elements two, three, and four of common-law fraud under *Hyten*, 491 Mich at 555: a false statement, that was known to be false, and that was made intentionality.[7]  As to element five, defendant acted in reliance on plaintiff's answer to the question as evidenced by the fact that it accepted the application and provided insurance coverage.  Defendant likewise suffered injury as a result of plaintiff's misrepresentation because, as established by the unrefuted affidavit of defendant's underwriting specialist employee, if plaintiff had disclosed she would be using the SUV for food delivery, defendant would have charged a significantly higher premium for the coverage.

Similarly, as to the issue of materiality, the facts of this case are almost identical to those in *Mota-Peguero* and *Fatty*.  Just as those plaintiffs falsely represented that they would not be using their vehicles to carry persons for a fee, plaintiff in the instant case misrepresented that she would not use the SUV to receive compensation for delivering food.  Just as in *Fatty*, defendant in the present case submitted an unrefuted affidavit by its representative.  While the affidavit in *Fatty* averred that the defendant would not have even issued the policy if it had known about the falsity of the defendant's statement,[8] defendant's representative in the present case conceded that defendant would have issued the policy had plaintiff accurately disclosed her intent to being compensated for food delivery while operating the SUV, but at a 33% higher premium, due to the increased risk of loss from such activity.  While no affidavit was submitted in *Moto-Peguero*, it held "[t]his Court made clear in *Fatty* that that false representation satisfied all of the elements necessary to support rescission of the insurance policy issued to the insured, so the insurer was entitled to summary disposition against its insured." *Moto-Peguero*, ___ Mich App at ___; slip op at 4, citing *Fatty*, unpub op at 5-6.  Accordingly, based upon defendant's unrefuted affidavit in this case, we find that a reasonably careful and intelligent underwriter would have regarded the anticipated use of the SUV for a paid food delivery service "as substantially increasing the chances of loss insured against, so as to bring about . . . the charging of an increased premium." *Id*. at ___; slip op at 3 (quotations marks and citation omitted).

Because defendant in the present case has established plaintiff's fraud in the procurement (such that we are not dealing with the claim of an innocent third party), and requested rescission, it was entitled to rescind the policy and declare it void *ab initio*.  See *Bazzi v Sentinel Ins Co*, 502 Mich 390, 412; 919 NW2d 20 (2018); *Hyten*, 491 Mich at 570-571.  Thus, the trial court erred when it denied defendant's motion for summary disposition.

---

[7] Although plaintiff sometimes argued below that she made no representation, she also admitted that she signed the application, which contains several representations, including the representation about not receiving compensation to deliver food.  Thus, there is no real dispute regarding element one of common-law fraud in the present case, i.e., a representation was made by plaintiff.

[8] *Fatty*, unpub op at 6.

Reversed and remanded for entry of an order granting summary disposition to defendant. We do not retain jurisdiction.

/s/ Randy J. Wallace
/s/ Michael J. Riordan
/s/ James Robert Redford